NATIONAL LABOR RELATIONS BOARD
v. HARBISON-WALKER REFRAC-
TORIES CO.

No. 12474.

Circuit Court of Appeals, Eighth Circuit.

June 1, 1943.

Charles K. Hackler, Atty., National Labor
Relations Board, of Warrensburg, Mo.

(Robert B. Watts, General Counsel, Ernest A. Gross, Associate General Counsel, Howard Lichtenstein, Asst. General Counsel, and Ruth Weyand and Leo J. Halloran, Attys., National Labor Relations Board, all of Washington, D. C., were on the brief), for petitioner.

Frank B. Edwards and W. Wallace Fry, both of Mexico, Mo., for respondent.

Before STONE, WOODROUGH, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

This case is before this court upon petition of the National Labor Relations Board for the enforcement of an order issued against respondent pursuant to section 10(c) of the National Labor Relations Act, 29 U.S.C.A. § 160(c). The order sought to be enforced directed respondent to cease and desist from the unfair labor practices found; to offer reinstatement with back pay to one Herbert Hillebrand, and to post appropriate notices. Enforcement is resisted on the grounds that the findings of fact made by the Board are not supported by substantial evidence and that the Board acted in excess of its authority in entering the order.

The Board found that respondent violated section 8(1) of the Act, 29 U.S.C.A. § 158(1), by making various anti-union statements, threats of discharge, by prohibition of union activity on company property while permitting anti-union activity thereon, and by posting an anti-union notice, and concluded that such activity constituted interference, restraint and coercion of its employees in the exercise of the rights guaranteed in section 7 of the Act, 29 U.S.C.A. § 157, and was an unfair labor practice within the meaning of section 8(1). These findings are sought to be sustained by evidence of the course of conduct pursued by respondent's supervisory employees.

Respondent is a Pennsylvania corporation, having its principal office at Pittsburgh, Pennsylvania, and is engaged in the manufacture and sale of fire brick and other refractory products. The corporation operates several plants located in Pennsylvania, Missouri, Texas, Indiana, Ohio and Kentucky. The only plant involved in this proceeding is located at Vandalia, Missouri, where respondent employs in excess of 500 employees at all times.

It appears that prior to September, 1941, no labor organization existed among the

company's employees at the Vandalia plant. On September 24, 1941, a preliminary meeting for the purpose of organizing a local branch of United Brick and Clay Workers of America was held, and at a subsequent meeting on October 1, 1941, an organization was perfected and an organizing committee named, consisting of Herbert Hillebrand and four other employees in the plant's shipping department. By November 1, 1941, about 42 employees, 28 to 30 of whom were employed in the shipping department, had become members of the union.

There is evidence that on October 3, 1941, respondent's superintendent Hardy and foreman Maune engaged in conversation with Martin Hillebrand, a brother of Herbert and member of the organizing committee, in which, after comment about a prize won in a dog show on the evening of October 2, Hardy remarked, "I didn't hear you won any prize the night before" —(which was the night of the union meeting). Hillebrand answered, "I am not so sure all the prizes have been given out," and later said, "Mr. Hardy, that thing is coming just as sure as death and taxes." Hardy's answer was, "That depends on the individual." There is evidence that it was not Hardy's custom to engage in conversation with Hillebrand while at work and the Board inferred that the conversation was sought by Hardy for the purpose of remarking on Hillebrand's union activity.

Martin Hillebrand also testified that on that same day Sub-foreman Jordan said to him, "I surely hate to see it come here— the first thing they want to do is strike", and later said, "I am going to get you. * * * I am going to bend down and sooner or later I am going to get you." Morris, another member of the organizing committee, testified that on the same day Jordan told him it was not permissible to solicit for the union, and said, "We don't want any union here. We can't fire for talking about the union, but we can find something to fire for." Jordan denied making these statements.

There is evidence of another incident occurring sometime in October 1941, when Foreman Maune came upon Martin Hillebrand telling other men at the plant that another company under union contract was paying a higher hourly rate than they were receiving for the same type of work. Maune is said to have stated that Hillebrand's statement was not true and that "all the

union organizer there wanted was the membership fees."

It appears also that sometime in October after respondent's supervisory employees had made it clear to the employees that no solicitation for union membership was permissible on company property, one Brown, employed in the shipping department, caused an anti-union petition to be prepared, signed it and posted it in a conspicuous place near the shipping office. The petition remained posted for several hours until Foreman Maune ordered Brown to remove it, but there is evidence to justify the inference that it was not removed until it was noted that no one else had signed it.

On November 27, 1941, respondent posted on its bulletin boards a "Notice to Employees", which in substance stated that it was the company's policy to comply with the National Labor Relations Act and that there would be no discrimination, restraint or coercion against any employee because of membership or nonmembership in any labor organization. The notice also stated, among other things, that the open shop policy of the company would continue and that intimidation or coercion of employees by any union or labor organization is prohibited. There is no evidence that any such conduct on the part of the union ever existed.

The evidence roughly sketched in the foregoing paragraphs formed the basis of the Board's conclusion that respondent has engaged in unfair labor practices. That body credited, for the most part, the testimony of the witnesses above mentioned and appears to have taken the position that though each incident when isolated by itself might seem harmless, yet when the chain of occurrences is considered in the light of the surrounding circumstances, the sum of the evidence leads to the conclusions which it made. From an examination of the record we can not say that the inferences which the Board drew from the evidence therein are not permissible. The findings of the Board are supported by evidence and cannot therefore be set aside. National Labor Relations Board v. Nevada Cons. Copper Corp., 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305; National Labor Relations Board v. Adel Clay Products Co., 8 Cir., 134 F.2d 342, decided April 1, 1943.

In addition to the finding that respondent has engaged in unfair labor practices, as

above reviewed, the Board also found that respondent violated section 8(3) of the Act by the discriminatory discharge of its employee Herbert Hillebrand because of his union membership and activities. The company contends that the evidence shows the discharge to have been for just cause; namely, wilful violation of a company work rule.

Herbert Hillebrand was employed in the shipping department as pick-up man on a loading crew. It appears that such a crew is composed of a pick-up man, two wheelers, and a hacker. In operation, the pick-up man assists the wheelers in loading fire bricks upon wheelbarrows, at which time it is his duty to inspect the bricks for defects. The wheelers then wheel their loads to the freight car where the hacker assists them in unloading. At that time the hacker, as a part of his duties, is required to perform what is termed a "visual" inspection of the bricks. It appears that the company does have an unwritten rule to the effect that neither a pick-up man nor a wheeler can unload more than half a load of bricks into the freight car when the hacker is absent from his post. The reason given for the rule is that a double check on the bricks is desired in order to minimize the possibilities of shipping inferior or defective bricks to customers. Some two or three weeks prior to November 1, Subforeman Jordan discovered Herbert Hillebrand unloading an entire load of bricks in the absence of the hacker. There is dispute as to what was said at the time, but it appears that Jordan warned Hillebrand of the infraction of the rule and told him that if he were caught again he would be discharged. Jordan reported this to Jackson, the immediate foreman. On November 1, 1941, Jackson came upon Hillebrand and his wheeler, Dickson, unloading bricks in the car in the absence of the hacker. Jackson immediately sent both men home, and on November 6th Hillebrand was discharged.

■ That Hillebrand was active in union organization work is evident. As pointed out, supra, he was a member of the organizing committee. It is also evident that Hillebrand was guilty of the alleged infraction of the company's rule. However, there is evidence that though the rule existed, it was more honored in its breach than its observance. It appears that the rule was not too well understood by the employees and though there were occasional reprimands made for infractions and sometimes short lay-offs imposed, no one was ever before discharged for the cause here given. We note, too, as did the Board, that Dickson, the wheeler, who was not a union member, returned to work. Respondent explains this on the grounds that Dickson was never before caught or warned, but Dickson himself stated that he had been warned several times. There is no testimony that Hillebrand's work was in any way deemed unsatisfactory by his superiors prior to the incidents mentioned. There is substantial evidence from which the Board could conclude that respondent's motive for discharging this employee was discouragement of membership in a labor union. The possibility of drawing either of two inferences did not prevent the Board from drawing one of them, and its conclusion must be sustained. National Labor Relations Board v. Nevada Consolidated Copper Corp., 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305.

■ Part 2(c) of the order directs the posting of a notice and sets forth the substance required to be stated in the notice. The third requirement as to the contents of the notice is "that the respondent's employees are free to become or remain members of United Brick and Clay Workers of America, affiliated with the American Federation of Labor, and that the respondent will not discriminate against any employee because of membership in or activity on behalf of that organization." This portion of the notice is obviously based on 1(a) of the order which requires respondent to cease and desist from "discouraging membership in United Brick and Clay Workers of America, affiliated with the American Federation of Labor, or any other labor organization of its employees, by laying off, discharging, or refusing to reinstate any of its employees, or in any other manner discriminating in regard to their hire or tenure of employment or any term or condition of employment." We think that the notice should follow the just quoted portion of the order and that 2(c) (3) of the order should be modified to read as follows: "(3) That respondent's employees are free to become or remain members of United Brick and Clay Workers of America, affiliated with the American Federation of Labor, or any other labor organization of its employees, and that the respondent will not discriminate against any employee be-

840

cause of membership in or activity on behalf of that organization or of any other labor organization of its employees."

Decree will be entered enforcing the Board's order as modified.