**NATIONAL LABOR RELATIONS BOARD v. FARGO FOUNDRY CO.**

No. 12685.

Circuit Court of Appeals, Eighth Circuit.

March 30, 1944.

Stephen M. Reynolds, Atty., National Labor Relations Board, of Minneapolis, Minn. (Robert B. Watts, Gen. Counsel, Howard Lichtenstein, Asst. Gen. Counsel, and Ida Klaus and Kate Wallach, Attys., National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

Herbert G. Nilles, of Fargo, N. D. (Nilles, Oehlert & Nilles, of Fargo, N. D., on the brief), for respondent.

Before STONE, THOMAS, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The controversy relates to a requirement in an order of the National Labor Relations Board that Fargo Foundry Company, upon request, bargain collectively with Federal Labor Union Local 22364, chartered by the American Federation of Labor, as the exclusive representative of the production employees in its plant at Fargo, North Dakota. The question arises on the Board's petition for enforcement of its order.

The Company contends that the Board's finding that the employees had selected the Union as their bargaining representative is unsupported by the evidence; that, on the contrary, the evidence conclusively shows that the employees had designated six specific persons as a special bargaining committee and not as an organ of the Union; that the Company was accordingly not required to bargain with the Union; and that it was also not required to bargain with the committee after a vacancy occurred in its membership, unless the committee was reconstituted by the employees, because its powers were exercisable only by the full committee jointly.

If the evidence warrants the Board's finding that the employees had selected the Union and not an independent committee of specific persons as their representative, then the order must be enforced, for it is clear that the Company has refused to bargain collectively with the Union.

The record shows, without dispute, that a majority of the Company's production employees had signed a paper, referred to in the testimony as a petition, which declared: "The Undersigned do hereby authorize the following committee of Local 22364 A. F. of L. to represent us in collective bargaining. The committee is as follows: Joseph Flor, Oscar Erickson, William Hoganson, Gottfried Peterson, Leland Patten and Carl Krumbein." Other facts, which follow, are also undisputed.

Prior to the execution of the petition, some of the employees had joined in organizing Federal Labor Union No. 22364, and had received a charter from the American Federation of Labor. The persons named in the petition constituted the committee appointed by the Union to negotiate a labor relations contract with the Company. Murrey, president of the North Dakota State Federation of Labor, called preliminarily upon Kornberg, general manager of the Company, and left a copy of a proposed contract with him. Kornberg was acquainted with Murrey and knew that he was the representative of the State Federation of Labor.

The proposed contract contained a recital, "This Agreement, made and en-

464

tered. into * * * by and between the Fargo Foundry Company, hereinafter referred to as the Employer, and the Foundry Employees Local Union 22364, A. F. of L., hereinafter referred to as the Union". Article I also expressly provided that "The Employer recognizes the Union as the sole collective bargaining agency for all employees of the employer, with exception of only the shop foremen and office staff."

Kornberg promised to go over the contract and then discuss it. Later he asked that he be furnished with some proof of authority, before entering into discussion with any committee. Murrey offered to have the Board hold an election under section 9(c) of the National Labor Relations Act, 29 U.S.C.A. § 159(c), but Kornberg suggested that it would be sufficient if the employees merely signed a petition. The Union then drew up the petition in question and had the employees sign it, and Murrey delivered it to Kornberg. Kornberg thereafter met with Murrey and the committee of employees named in the petition, and discussed some of the contract provisions. Three meetings were thus held, during the course of which the committee agreed to redraft parts of the contract. The contract was still unsatisfactory to Kornberg, and in the discussion which occurred at the fourth meeting he protested that Murrey seemed to be doing all the talking instead of the members of the committee. At the last two meetings, La Motte had appeared in place of Hoganson, who had left the Company's employ, and Kornberg raised no objection to his right to participate, on being told that he had been chosen to replace Hoganson.

Shortly after the fourth meeting, Kornberg discovered that Krumbein, one of the committee members, who had been with the Company for seventeen years, was an enemy alien, and he discharged Krumbein on the ground that the Company was then making war goods. Without saying anything to the committee, he placed a letter in each employee's pay envelope, stating:

"The management is writing this letter to you to notify you that a certain committee purporting to be selected by a majority of the employees will not be recognized as a bargaining committee unless and until the entire chosen committee is duly selected, chosen, and certified according to law.

"One reason for this is that there. is at this time an enemy alien sitting in your committee and we are advised that according to law the management is not obligated to negotiate with an enemy alien in regard to labor problems. Another reason is that one member of such committee purporting to be chosen has left the state and hence the membership of the committee is incomplete.

"We believe that you did not know of these conditions when electing this committee or you would not have surrendered your individual rights to a bargaining group that may be influenced by an enemy alien."

From that time on Kornberg took the position that the Union never had been the bargaining representative of the employees, and he refused to resume negotiations with Murrey and the remaining members of the committee.

■ There are other facts and circumstances also in the testimony of the witnesses, which entered into the Board's finding, but which it is unnecessary to detail here. The undisputed evidence related above, with the implicational inferences which the Board was authorized to draw from it, would alone be sufficient, within the purview of the National Labor Relations Act, to sustain the Board's finding that the employees had selected the Union as their bargaining representative, and to permit the Board to refuse to adopt the factual view, taken by the Company for the first time after four meetings with Murrey and the committee on the Union's proposed contract, that the six persons, as an independent committee and not as an organ of the Union, constituted the employees' bargaining representative.

The Company argues here that the petition, as a matter of law, requires us to hold that "this appointment was not the appointment of the Union but was the appointment of the six individuals named therein", and that "the reference to the fact that they happened to be a committee of the Union is merely descriptio personae." We do not agree that even the application of legalistic canons would produce the absolutism for which the Company contends. But in any event that is not the full question here. The petition had been requested, not as a legal instrumentality by which the employees were to exercise their power of selection, but as a means of practical proof to satisfy

Kornberg that the right, which the Union claimed, actually existed. It was intended merely as evidence of the fact of selection, the same as a checking of union membership cards against the payroll would have been, which Kornberg had declared was unnecessary. Kornberg had also indicated, as previously stated, that it was unnecessary to ask the Board to take a ballot of the employees, which Murrey had proposed, and which would, of course, have furnished conclusive evidence of the employees' selection. The petition constituted sufficient proof of union selection to satisfy Kornberg at the time the negotiations began, so that he was willing to hold four meetings to discuss the Union's proposed contract. His legalistic concepts apparently did not come into being, until it was necessary for him to find some justification for discontinuing the contract negotiations.

■ The Board properly was concerned, not with any isolation of the scrivenistic niceties of the petition, but with a practical evaluation of the whole situation from the petition and the circumstances surrounding it, together with all the other facts in evidence, as a reasonable basis for deciding that the employees had in fact selected the Union as their representative. The Board clearly had the right to make its appraisal in the light of the entirety of the facts, among others, that the Union, without any challenge, had claimed the right to represent the employees and had submitted to the Company a proposed contract; that the Company had requested that it merely be furnished with some practical proof of the Union's authority to represent; that Kornberg had declared that a Board election or a check of membership cards against the payroll would be unnecessary, but that a signed petition would be sufficient; that the Union had prepared and obtained the signatures to the petition for this purpose and had delivered it to Kornberg; that the persons named in the petition as a committee were the members of the Union's previously-appointed negotiating committee; that the Company had accepted the petition as sufficient for entering into consideration and

discussion of the Union's proposed contract; that it was not until these negotiations had proved unsatisfactory that the Company decided to challenge the Union's authority; and that Kornberg had not presumed to advise the Union or the committee that he was breaking off negotiations with them, or to discuss the matter with them, but undertook to inform the employees individually by a letter, in which he apparently also attempted to discredit the committee.

■ In the Board's consideration of the petition in connection with the other facts, it was entitled to take into account that that paper had never purported to be a work of scrivener's art but simply one of workingman's expression. What was said in Lebanon Steel Foundry v. National Labor Relations Board, 76 U.S.App.D.C. 100, 130 F.2d 404, 407, certiorari denied 317 U.S. 659, 63 S.Ct. 58, 87 L.Ed. 530, may appropriately be repeated here: "The Wagner Act requires no specific form of authority to bargain collectively. * * * Authority may be given by action as well as in words. * * * Not form, but intent, is the essential thing. * * * Lawyers' formulae, formalities and words are not needed. The agreements or authorizations are laborers', not scriveners', expressions of intention. They are expected to be made in the workingman's manner, not in that of management as it conducts corporate affairs, with a lawyer at its side. For the same reason rules or principles of construction should be simple, liberal, of the commonsense variety."

■ The facts, circumstances, and inferences warranted the Board in finding that the Union was the actual bargaining representative of the Company's employees, and that finding is conclusive here. National Labor Relations Board v. Nevada Consolidated Copper Corp., 316 U.S. 105, 106, 107, 62 S.Ct. 960, 86 L.Ed. 1305; National Labor Relations Board v. Central Steel Tube Co., 8 Cir., 139 F.2d 489; National Labor Relations Board v. Harbison-Walker Refractories Co., 8 Cir., 135 F.2d 837, 838.

An order enforcing the Board's order will be entered.