## NATIONAL LABOR RELATIONS BOARD v. CROWN CAN CO.

### No. 12547.

Circuit Court of Appeals, Eighth Circuit.

Oct. 25, 1943.

Rehearing Denied Nov. 9, 1943.

---

Russell Packard, Atty. for National Labor Relations Board, of Chicago, Ill. (Robert B. Watts, General Counsel; Ernest A. Gross, Associate General Counsel; Howard Lichtenstein, Asst. General Counsel; Roman Beck, Irene R. Shriber, and Frank Donner, Attys., National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

N. W. Hartman, of St. Louis, Mo. (Fordyce, White, Mayne, Williams & Hartman, of St. Louis, Mo., on the brief), for respondent.

Before WOODROUGH, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

The National Labor Relations Board has filed a petition asking the court to enforce its order of July 31, 1942 (42 N.L.R.B. 1160), entered in a regular proceeding under § 10 of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq., and directed to the respondent, Crown Can Company, at its Nebraska City, Nebraska, plant.

The respondent, a Pennsylvania corporation, is engaged in the manufacture, sale, and distribution of cans. Its principal office and plant are in Philadelphia, Pennsylvania. It operates plants in other parts of the country, including the plant involved in this proceeding.

The order is based upon the Board's findings and conclusion that the respondent had been and was engaging in unfair labor practices in violation of § 8(1), (3) and (5) of the Act. The order directs respondent:

1. To cease and desist from (a) refusing to bargain collectively with the American Federation of Labor (called A.F. of L. hereinafter) as the exclusive representative of its production and maintenance employees; (b) discouraging membership in the A.F. of L.; (c) in any other manner interfering with its employees in the exercise of the right of self-organization.

2. Affirmatively, (a) upon request, to bargain collectively with the A.F. of L. as the exclusive representative of its employees; (b) offer Gordon Armstrong reinstatement with back pay; (c) post notices; and (d) notify the regional director.

Enforcement is resisted in reliance upon four legal propositions, namely: 1. That the Board has no right to interfere with or limit the right of free speech; 2. That the Board, in ordering the reinstatement of Gordon Armstrong, failed to consider the seasonal operation of respondent; 3. That there is no duty of an employer to bargain until a representative of an appropriate bargaining unit presents convincing evidence of majority support; and 4. The Board's findings of unfair labor practices are not supported by substantial evidence.

The first of these propositions we think would be conceded by every one, with the understanding that "free speech" does not mean license to violate valid laws, such as laws against perjury, libel, slander, or laws against restraint or coercion of employees in the exercise of their rights under the Act. No application of the constitutional right of freedom of speech is made by counsel to the order or findings of the Board in the instant case, and we are unable to understand its pertinency.

The proposition that the Board, in reinstating employee Gordon Armstrong, failed to consider the seasonal operation of respondent's plant, is raised here prematurely. That question can arise only when respondent has undertaken to obey the order to make Armstrong whole for loss of pay. If at that time the Board, Armstrong, and the respondent cannot agree, an appropriate issue, if properly raised, may be presented to this court for decision.

A brief statement of facts found by the Board and supported by substantial evidence will aid in the discussion of the third and fourth propositions.

In October, 1940, two of respondent's employees, Gordon Armstrong and Earl Braye, undertook to obtain a charter for a local union from the A.F. of L. On October 7, 1940, a majority of the employees at the plant signed a petition authorizing the A.F. of L. to represent them

as their collective bargaining agent for one year and requesting the issuance of a union charter. Pursuant to the request a charter was issued on October 16, 1940. On October 14, 1940, Roy M. Brewer, President of the Nebraska Federation of Labor, consisting of local unions affiliated with the A.F. of L. in Nebraska, sent the following letter to respondent's manager:

"October 14, 1940.
Registered Return Receipt Requested.
Mr. Louis Zannettii,
    Manager Crown Can Company,
        Nebraska City, Nebraska.
Dear Sir:
    This is to advise you that a majority of your employees have selected the American Federation of Labor to represent them as their collective bargaining agent for the purpose of negotiating an agreement with your Company covering hours of work, rates of pay, and conditions of employment.
    As their representative I would like to make arrangements to meet with you at the earliest mutually agreeable date.
    Will you please advise me by return mail when it will be possible to meet with you and whether or not you are willing to recognize the A.F. of L. as their representative.
    An immediate reply will be appreciated.
            Yours very truly,
                Roy M. Brewer,
                    Organizer, American Federation of Labor."

Zanetti never answered this letter, though he was in charge of the plant, had received the letter, and his duty was to answer correspondence. His only explanation for failure to answer the letter was that he was quite busy at the time.

On October 16, 1940, two days after the letter had been sent, Zanetti called Armstrong and Braye into his office. Most of the employees were already there. As Armstrong walked into the office, Zanetti said: "We will have a little family get-together; some of the boys seem to have something against me. I don't know what I ever done for you guys to do a thing like this to me. You can all speak up; you don't have to be afraid of getting fired. You can say what you want to." Employees Francis Cole and Joe Michon stated that they had said all they wanted to and that "We guys have decided to stay by the company." Then Zanetti turned to Braye and asked: "What he [Zanetti] had

ever done to him [Braye] that he should do that." He also asked Armstrong what he had against him. Both men answered that they had nothing personal against Zanetti but were merely helping to organize a union. Zanetti then stated that "if you boys insist on pushing this organization" the plant "will fold up" because "it was just a drop in the bucket" in comparison with the company's other plants. At the close of the meeting Zanetti said: "If it is a wage increase you want I will see what I can do about it."

Four days later, on October 20, there was a general wage increase.

After the meeting in Zanetti's office, Braye, who with Armstrong had taken the initiative in organizing the union, told Armstrong that he was withdrawing. All attempts to get the employees together to install the union charter failed, and the charter never was installed. Approximately three months after the charter was issued, it was suspended for nonpayment of dues.

Between October 16, 1940, and June, 1941, no further union activity occurred at the plant. In June, 1941, there was an attempt to revive the union, but it failed because the employees were still "afraid" that establishing a local, as originally planned, would result in the loss of their employment. No further attempt was made by the representatives of the union to re-establish the organization at the plant.

The Board found that "By ignoring the Union's request for recognition and by engaging in anti-union conduct clearly indicative of a disposition not to recognize and deal with the Union, the respondent has failed in its duty to bargain collectively."

The respondent contends that the Union representative at no time presented any convincing evidence of majority support, and that, therefore, the evidence does not support such finding. The conduct of Zanetti subsequent to the receipt of the letter of October 14, 1940, warranted the Board in finding a refusal to bargain within the meaning of the Act. National Labor Relations Board v. Wm. Tehel Bottling Co., 8 Cir., 129 F.2d 250, 254; National Labor Relations Board v. Somerset Shoe Co., 1 Cir., 111 F.2d 681. It is true, of course, that an employer may request reasonable proof that the union represents a majority of the employees, and in the absence of

such proof he need not bargain, if he in good faith doubts the union's majority. National Labor Relations Board v. Wm Tehel Bottling Co., supra, and cases cited. In the instant case no inquiry was made nor proof requested by respondent, so that it is now in no position to complain that the union failed to present convincing proof that it represented a majority.

Upon the evidence referred to above the Board found that the respondent interfered with, restrained and coerced its employees. It cannot be said that this finding is not supported by substantial evidence. Respondent is responsible for Zanetti's conduct. His warning that the plant would close if the employees continued to "push" the union, together with the attendant circumstances support the finding of intimidation. Gamble-Robinson Co. v. National Labor Relations Board, 8 Cir., 129 F.2d 588, 590; National Labor Relations Board v. Viking Pump Co., 8 Cir., 113 F.2d 759, 760. Zanetti's promise that he would see what he could do about higher wages and the general increase which followed within a week warranted the Board's conclusion that the respondent was showing its employees that "resort to self-organization was plainly unnecessary." National Labor Relations Board v. Christian Board, etc., 8 Cir., 113 F.2d 678, 681, 683. "Interference is no less interference because it is accomplished through allurements rather than coercion." Western Cartridge Co. v. National Labor Relations Board, 7 Cir., 134 F.2d 240, 244.

Respondent undertakes to argue here the weight of the evidence taken at the hearing. Counsel say that a majority of the employees of the plant testified that the respondent at no time interfered with, restrained or coerced the employees, while the Board based its findings upon the testimony of Gordon Armstrong. But the remedy furnished by the Act is just as available when coercion succeeds as when it fails. Western Cartridge Co. v. National Labor Relations Board, supra; National Labor Relations Board v. John Engelhorn & Sons, 3 Cir., 134 F.2d 553, 556, 557. The Board, not the court, determines the credibility of the witnesses. National Labor Relations Board v. Nevada Copper Co., 316 U.S. 105, 106, 107, 62 S.Ct. 960, 86 L.Ed. 1305.

The respondent argues that there is no substantial evidence that the union was the designated representative of the employees in the bargaining unit. We think otherwise. The evidence shows that there were 13 production and maintenance employees at the plant. At least 10 of them had signed the petition of October 7, 1940, authorizing the A.F. of L. to represent them as their collective bargaining agent. Nothing in the record indicates that a single one of them had revoked such authorization on October 14, 1940, the day on which Brewer wrote the letter to Zanetti set out supra. At the hearing, five of the ten men testified that they no longer wished to be represented by the union. The finding of coercion and intimidation by the Board, supported as it is by the evidence takes the seeming virtue out of respondent's argument. "The unfair labor practices of the respondent cannot operate to change the bargaining representative previously selected by the untrammelled will of the majority." National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 340, 60 S.Ct. 918, 929, 84 L.Ed. 1226.

The Board found that Gordon Armstrong was discharged for his union activities and ordered that he be offered immediate reinstatement and made whole for loss of pay. The finding is supported by substantial evidence. Armstrong was one of respondent's three oldest employees. He was laid off on November 30, 1940, and never reinstated, although he reported for work. He was active in the organization of the union. These facts with the surrounding circumstances in evidence and referred to by the Board abundantly support its finding.

Other matters are argued by respondent which in no way appear in the record. We have no power to consider such matters. The case must be heard here solely on the record. National Labor Relations Board v. Newport News Co., 308 U.S. 241, 249, 250, 60 S.Ct. 203, 84 L.Ed. 219. See, also, National Labor Relations Board v. Wm. Tehel Bottling Co., supra.

We find no merit in respondent's objections to the Board's order. A decree of enforcement will, therefore, be entered.