## HUMBLE OIL & REFINING CO. v. NATIONAL LABOR RELATIONS BOARD.

### No. 10642.

Circuit Court of Appeals, Fifth Circuit.

Feb. 8, 1944.

J. Q. Weatherly and W. J. Barnes, both of Houston, Tex., for petitioner.

Robert B. Watts, Gen. Counsel, National Labor R. Board, Ernest A. Gross and Guy Farmer, Associate Gen. Counsel, N.L.R. Board, all of Washington, D. C., and Robert F. Proctor, Atty., N. L. R. B., of Fort Worth, Tex., for respondent.

Before HUTCHESON, McCORD, and LEE, Circuit Judges.

LEE, Circuit Judge.

In proceedings had pursuant to charges filed by two C. I. O. affiliates, the National Labor Relations Board found that the Humble Oil & Refining Company had interfered with and coerced its employees in their attempt to organize for collective bargaining, and had discouraged membership in a labor organization by discharging an employee, Hervie Bradley, because of his union activities, thereby violating Subsections (1) and (3) of Section 8 of the National Labor Relations Act, 29 U.S.C.A. § 158(1, 3). The order entered required that the Company:

1. Cease and desist from these unfair labor practices;

2. Offer Bradley reinstatement or place him upon a preferential hiring list upon his return from military service;

3. Make him whole for any loss of pay sustained by reason of his discharge prior to his induction into the Army and any further loss of pay that he might sustain following his discharge from military service should the Company decline to perform its obligations relating to his resumption of employment; and

4. Post appropriate notices.

Upon its petition for review, the Company primarily contends that the order should be set aside because the findings upon which it was predicated were not supported by any substantial evidence. In the alternative it insists that, since Bradley was a temporary employee whose rights of employment were subordinated by statute and by contract to the rights of older employees serving in the Armed Forces, that portion of the order relating to his reinstatement, or placement upon a preferential hiring list, was improper. The Board contends that the findings are in accord with the evidence and seeks enforcement of the order as entered, pointing out that its provisions, when correctly interpreted, confer upon Bradley no greater rights with respect to re-employment than the Company agrees he should have.

The case requires no exhaustive analysis of the facts to make manifest that there was substantial evidence to support the findings as to the unfair labor practices. The events relevant to the issue took place during the summer and fall of 1942, at which time the Federation, an unaffiliated Union, and Local No. 1002, of the Oil Workers' International Union, a C. I. O. affiliate, were engaged in a bitter struggle for a majority membership. Petitioner's labor department employed approximately 450 men under the general supervision of a foreman. These men performed their work in smaller groups under the immediate control of a supervisory employee called a "gang-pusher." One such supervisory employee, when selecting men from his group to be transferred to more desirable employment, stated that only Federation members would be chosen; at the same time he spoke most disparagingly of the C. I. O. Another, of whose crew Bradley was a member, told his men that they would derive no benefit from wearing C. I. O. buttons, and, in a general admonition to his crew to improve the character of their work, threatened to discharge two or three C. I. O. members. He also accused Bradley of shirking his duties after becoming a C. I. O. member, and warned another laborer against signing men into

the C. I. O. A third supervisor, when an employee was about to be discharged, intimated that he would have interceded in his behalf if the worker had been a member of the Federation instead of the C. I. O.

These supervisory employees were clothed with no final authority, but their recommendations as to transfers and discharges usually were honored by the foreman. This indirect authority clearly was adequate to spur the laborers to reasonable efforts to retain the good-will of the supervisors, and to respect their orders as representatives of the management. It is well recognized that this coercive conduct of supervisory employees possessing such power, particularly when timed to occur during a formative period, may exert a profound influence upon and interfere with the free exercise by the employees of their right to choose a bargaining representative.[1]

The evidence believed by the Board relating to the discharge of Bradley further supported the finding of Company interference and warranted the inference that his union membership was the dominant consideration motivating his discharge. He was employed in April 1942 and was assigned to a work group of the labor department supervised by one of the "gang-pushers" whose conduct was hostile to the C. I. O. Union.

It was a policy of the Company to require periodic reports containing a rating of each employee as to the quality of his services rendered. Prior to Bradley's affiliation with the Union the reports of his performance record were fairly favorable, causing his supervisor to predict that he would make a good man. After he joined the Union and openly displayed his C. I. O. button, the reports upon his record of performance became very unfavorable.

Bradley was later discharged upon the recommendation of his supervisor on the alleged grounds that he required too much supervision and neglected his work to eat during working hours. Within the few days immediately preceding the discharge of Bradley, the supervisor profanely accused him of shirking his duties after joining the C. I. O., and in his presence uttered the threat of discharging several C. I. O. members. Bradley's fellow employees testified that he was a willing worker who performed his duties better than some and as well as any, and it is undisputed that eating during working hours was a trivial offense frequently indulged in by the men. It is the exclusive function of the Board to resolve questions as to the credibility of witnesses,[2] and under the facts found by it to be true, the reasons assigned by the Company to justify the discharge were utterly discredited. The evidence to which the Board attached credence compelled the inference that the true ground for his discharge was his union membership.

We also agree that there is no real issue between the parties as to the validity of that portion of the Board's order relating to the re-employment of Bradley after his discharge from the Army. Under his agreement with the Company Bradley's employment was temporary in nature and his seniority status and rights of re-employment expressly were subordinate to those of permanent employees in the Armed Forces and other temporary employees of longer standing. These provisions but announced the relative rights of the contracting parties under and in harmony with the

[1] H. J. Heinz Co. v. National Labor Relations Board, 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309; National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368; International Association of Machinists v. National Labor Relations Board, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50; National Labor Relations Board v. Texas Mining & Smelting Co., 5 Cir., 117 F.2d 86; Solvay Process Co. v. National Labor Relations Board, 5 Cir., 117 F.2d 83; Cudahy Packing Co. v. National Labor Relations Board, 10 Cir., 118 F.2d 295; Valley Mould & Iron Corp. v. National Labor Relations Board, 7 Cir., 116 F.2d 760.

[2] National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368; International Association of Machinists v. National Labor Relations Board, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50; Oughton v. National Labor Relations Board, 3 Cir., 118 F.2d 486; Texas Co. v. National Labor Relations Board, 7 Cir., 119 F.2d 23; New York Handkerchief Mfg. Co. v. National Labor Relations Board, 7 Cir., 114 F.2d 144; National Labor Relations Board v. Texas Mining & Smelting Co., 5 Cir., 117 F.2d 86; Continental Oil Co. v. National Labor Relations Board, 10 Cir., 113 F.2d 473.

policy of the Selective Service Act. The order of the Board takes cognizance of these provisions and does not confer upon Bradley any rights antagonistic thereto.

The petition to set aside the order is denied and the petition for enforcement is hereby granted.