## NATIONAL LABOR RELATIONS BOARD v. CHICAGO STEEL FOUNDRY CO.

### No. 8493.

Circuit Court of Appeals, Seventh Circuit.

May 10, 1944.

Alvin J. Rockwell, Gen. Counsel., Malcolm F. Halliday, Associate Gen. Counsel, Howard Lichtenstein, Asst. Gen. Counsel, William J. Isaacson, and John H. Garver, Attys., all of Washington, D. C., and Les-

ter Asher and Jack Evans, both of Chicago, Ill., for petitioner.

Allen D. Holloway, Albert J. Smith, and John Harrington, all of Chicago, Ill., for respondent.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

In proceedings held pursuant to charges filed by Local 214 of the International Union, United Automobile, Aircraft & Agricultural Implement Workers of America, the Board found that the respondent, Chicago Steel Foundry Company, had interfered with, restrained, and coerced its employees in violation of § 8(1), and that by its refusal of overtime to and discharge of William Sidders because of his union activities and by its discriminatory lay-off of 9 union members, it had violated § 8(1) and (3) of the National Labor Relations Act, 29 U.S.C.A. § 158(1, 3). The Board entered an order requiring the respondent to cease and desist from the unfair labor practices found, to offer reinstatement and back pay to Sidders, and to make whole the employees discriminatorily laid off.

Respondent, a Maine corporation having its principal office and plant in Chicago, Illinois, is engaged in interstate commerce, manufacturing, selling, and distributing steel castings. No question is raised as to jurisdiction.

Respondent does not question the Board's findings that respondent was antagonistic to the efforts of its employees to organize a union, and that certain of respondent's officials and supervisory employees distributed anti-union pamphlets, interrogated the employees concerning their union affiliations and made coercive statements in disparagement of the union, which interfered with, restrained, and coerced its employees in the exercise of the rights guaranteed them in § 7 of the Act, 29 U.S.C.A. § 157. This leaves for review only the question whether there was substantial evidence in support of the Board's findings that the 9 union members were discriminatorily laid off and whether Sidders was discharged and refused overtime because of his union activities.

The controlling circumstances or events relevant to this issue, as revealed by the record, are that the first attempt to unionize the employees was made in April or May, 1940. To counteract the drive, Adams, respondent's superintendent, summoned to his office all of the squeezer molders employed on the day shift and told them that no union was wanted in the plant, and stated, "We have ways of getting rid of a union man." "I can say * * * your work is no good and many other things." In May, 1941, Adams said, "They had it [a union] in here once, and Mr. Evans [respondent's president] threw it out." "It will never get back in here again." In February, 1942, Adams inquired of Carlton: "Carlton, what is all this I hear about you and Peters trying to organize the shop and you being the president, * * * what good do you think that the C.I.O. could do you * * *."

Notwithstanding respondent's antiunion hostility, the union continued to gain adherents, and arranged for an election to be held under the auspices of the Board's Regional Office.

Sidders, an able and efficient employee, entered respondent's employ in 1931 and became chief melter in charge of an electric furnace in 1939, responsible for the quality and the carbon content of the molten steel within specified ranges. Sidders joined the union in the spring of 1941, became a member of the union's bargaining board, and during lunch periods solicited union membership among respondent's employees. Sidders' attitude and advocacy was known to the respondent. May 16, three days before the election, Adams, noticing that Sidders was wearing a union button, said to him: "What do you think you are going to get out of the union * * * ?" "We are glad to find out what kind of rats you are." Two days later, Doherty, respondent's sales manager, inquired of Sidders whether he was doing the "right thing" in joining the union. On election day Adams called Sidders into his office and told him, "I want you to remember from this minute on I am going to start pushing you and I am going to push you plenty." "From now on you are supposed to be a melter here." "* * * don't get your carbons in a five point range." "You will not be a melter here anymore."

At the election held on May 19, the union obtained sixty per cent of the votes cast. Two days later respondent laid off 23 employees, 8 of whom were squeezer molders and 7 foundry workers, all members of the union, including the president

and secretary of the union—of which fact respondent had knowledge—and 8 miscellaneous laborers, four of whom were members of the union. Fifty to sixty per cent of all the molders and sixty-five to seventy per cent of all the foundry workers were members of the union.

On May 20, Sidders, in accordance with an order made a week earlier by Roeder, respondent's metallurgist, reported for work two hours before his shift, to repair the roof of the electric furnace outside of his regular hours at overtime rates of pay, a function which he had performed for two years. Roeder refused to allow him to repair the roof and stated: "You [Sidders] are not supposed to work on the roofs anymore" because "the roofs have not been standing up as well as they should have * * *." On the same day Adams called Sidders into his office and talked to him about the carbon contents of his heats and told him that an A number 1 melter ought to keep the carbon range within ten points. On cross-examination Adams testified that all of the melters employed by respondent were inferior to Sidders and that the work on the other shifts was about the same as Sidders'. Sidders was discharged on June 26.

The Board did not give credence to the testimony of Roeder and Adams as to the reasons for the denial of overtime to and the discharge of Sidders, and found that the motivating cause for the denial and discharge was Sidders' membership in and assistance to the union.

The Board also found that the laying off of some of the employees was necessitated by legitimate considerations, but in view of respondent's deep-rooted hostility toward the union and respondent's failure to show upon what basis 9 of the employees were selected for lay-off, it found that 3 of the 8 squeezer molders and 6 of the 8 foundry workers were laid off because of their union membership and activity.

Respondent, contending that the findings are not supported by substantial evidence, insists that there is no evidence of discrimination as to the 9 employees, and that if it be assumed that an inference of discrimination has been created, it has been destroyed by the evidence. With this contention we are unable to agree.

To be sure, percentage evidence, standing alone, will not support or sustain an order based on § 8(3) of the Act. Montgomery Ward & Co. v. National Labor Relations Board, 7 Cir., 107 F.2d 555. But the disproportionate treatment of union and nonunion workers may be very persuasive evidence of discrimination, National Labor Relations Board v. Bachelder, 7 Cir., 120 F.2d 574, and may create an inference of discrimination leaving it to an employer to give an adequate explanation of the discharge or lay-off, Montgomery Ward case, supra, 107 F.2d 560, and when there is evidence tending to prove that the employer has openly expressed his hostility to union members, specifically warning them that he has ways of getting rid of a union man, and there is no evidence negativing the inference of discrimination, we can not say that the inference thus created has been destroyed. Moreover, what inference should be drawn from the evidence is a function of the Board. National Labor Relations Board v. Nevada Consol. Copper Corp., 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305.

Without further discussion, but after reviewing and considering the record relating to Sidders' discharge and the denial of overtime, it will be enough to say that we are of the opinion that it was reasonable for the Board to infer that Sidders' membership in and his activities in behalf of the union were the real reason for his discharge and denial of overtime.

The petition of the Board is granted and a decree enforcing its order will be entered.