NATIONAL LABOR RELATIONS BOARD
v. LAISTER–KAUFFMANN AIRCRAFT
CORPORATION.

No. 12784.

Circuit Court of Appeals, Eighth Circuit.

July 18, 1944.

Rehearing Denied Sept. 7, 1944.

---

Stephen M. Reynolds, of Minneapolis, Minn. (Alvin J. Rockwell, Gen. Counsel, Malcolm F. Halliday, Associate Gen. Counsel, Howard Lichtenstein, Ass't Gen. Counsel, and Owsley Vose and William T. Whitsett, Attys., National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

Robert D. Abbott, of St. Louis, Mo., for respondent.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This is a petition to enforce an order of the National Labor Relations Board requiring respondent to cease and desist from certain unfair labor practices, set out in the margin hereof,[1] to offer reinstatement with back pay to Marie Noeth, to make whole Emma Schaper, an employee not desiring reinstatement, to post appropriate notices and notify the regional director. The Board's order was based on its conclusions of law, drawn from its findings, that "By discriminating in regard to the hire and tenure of employment of Emma Schaper and Marie Noeth, and thereby discouraging membership in International Association of Machinists, District No. 9, the respondent has engaged in and is engaging in unfair labor practices, within the meaning of Section 8(3) of the Act [29 U.S.C.A. § 158(3)];" and that "By interfering with, restraining, and coercing its employees in the exercise of the rights guaranteed in Section 7 of the Act [29 U.S.C.A. § 157], the respondent has engaged in and is engaging in unfair labor practices, within the meaning of Section 8(1) of the Act."

Respondent on this appeal contends (1) that there was no substantial evidence to support the finding of the Board that respondent was guilty of interference with and restraint of its employees in their right to self organization in violation of Section 8(1) of the Act; (2) that there was no substantial evidence to support the finding of the Board that Emma Schaper and Marie Noeth were discharged because of their union affiliations and activities in violation of Section 8(3) of the Act; (3) that the Board erred in finding that Bertha Rice was a representative of management for whose statements respondent was responsible; (4) that the Board erred in overruling the examiner's denial of a motion

---

[1] The Board's order is as follows:

"1. Cease and desist from:

"(a) Discouraging membership in International Association of Machinists, District No. 9, or in any other labor organization of its employees, by discharging or refusing to reinstate any of its employees, or in any other manner discriminating in regard to their hire and tenure of employment, or any term or condition of their employment;

"(b) In any other manner interfering with, restraining, or coercing its employees in the exercise of the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purposes of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the Act.

"2. Take the following affirmative action, which the Board finds will effectuate the policies of the Act:

"(a) Offer to Marie Noeth immediate and full reinstatement to her former or a substantially equivalent position, without prejudice to her seniority and other rights and privileges;

"(b) Make whole Marie Noeth for any loss of pay she may have suffered by reason of the respondent's discrimination against her, by payment to her of a sum of money equal to the amount which she normally would have earned as wages during the period from the date of the respondent's discrimination against her to the date of the Intermediate Report herein and during the period from the date of this Order to the date of the respondent's offer of reinstatement, less her net earnings during such periods;

"(c) Make whole Emma Schaper for any loss of pay she may have suffered by reason of the respondent's discrimination against her, by payment to her of a sum of money equal to the amount which she normally would have earned as wages during the period from the date of the respondent's discrimination against her to the date upon which she secured the position she held at the time of the hearing herein, less her net earnings during such period;

"(d) Post immediately in conspicuous places at its plant in St. Louis, Missouri, and maintain for a period of at least sixty (60) days from the date of posting, notices to its employees stating (1) that the respondent will not engage in the conduct from which it is ordered to cease and desist in paragraphs 1(a) and (b) of this Order; (2) that the respondent will take the affirmative action set forth in paragraphs 2(a), (b), and (c) of this Order; and (3) that its employees are free to remain and become members of International Association of Machinists, District No. 9, and that the respondent will not discriminate against any employee because of membership or activity in that organization;

"(e) Notify the Regional Director for the Fourteenth Region in writing, within ten (10) days from the date of this Order, what steps the respondent has taken to comply herewith.

"And it is further ordered that the complaint be, and it hereby is, dismissed in-

to strike testimony pertaining to the arrest of a witness for the Board; (5) that the Board erred in finding that certain supervisory and executive personnel made the statements attributed to them, and that the testimony given by the Board's witnesses on this point was not substantial evidence.

■ 1. The Board had before it substantial evidence from which it could infer and find as a fact that respondent was guilty of interference with and restraint of its employees in their right to self organization in violation of Section 8(1). A detailed discussion of the evidence is unnecessary.[2] It appears that respondent was organized and began the production of airplane gliders in St. Louis in the fall of 1941. Its executives were, at all the times mentioned herein, John W. Laister, president and general manager; M. N. Whitehead, vice-president and director of personnel; J. R. Kauffmann, secretary-treasurer; and W. F. Nesbit, assistant secretary. The latter also had certain managerial functions. Organizational efforts on behalf of the Union were begun in September, 1942. The circumstances upon which the Board based its findings of unfair labor practices may be summarized as follows: At a meeting of employees interested in the Union, Emma Schaper, an employee in the rib assembly section of the woodshop, was chosen "Steward." Union bargaining authorizations were signed, and Union buttons distributed. Emma Schaper received a button somewhat larger than those given the other employees and bearing the designation "Steward" thereon. On the following day Nesbit, during an inspection of the plant, noticed the button and requested Emma to come to his office and discuss the Union. There is testimony that he asked her how many of respondent's employees belonged to the Union, "what she thought she would gain by trying to get a Union in there;" threatened that the plant would shut down if the Union came into the plant, asked her to influence the other girls in the woodshop to cease their organizational activities, and hinted at a promotion in store for her. That on the same day Guy E. Williams, supervisor of the woodshop, asked a group of the girl workers in the rib assembly section what they expected to gain from getting a union in the shop, and on receiving a reply indicating that the girls expected wage increases, stated: "Well, you know, I have belonged to a union too, and all you do is pay your money in and don't get nothing out of it." That on the following day, September 24, Nesbit, in the presence of Williams, remarked to Pfeiffer, an employee, concerning Emma Schaper and Marie Noeth: "I see we got a couple of union stewards in here * * * Emma and Marie must have went out with some union official and got drunk and joined the Union." That Bertha Rice, lead girl in the rib assembly section of the woodshop, told Andrew Eckert, an employee, that "she didn't think the company would stand for it [the Union] because she didn't think they had enough money to pay any more salaries." That in October, after Schaper and Noeth had been discharged, Rice remarked to Eckert that "if we didn't all be careful we would all get it;" and that Rice, after ascertaining that employee Hairgrove was planning to attend a Union meeting, asked her to "come back and let me know who all is there and let me know what goes on." That after the meeting Rice asked Hairgrove for information as to the persons attending and asserted that Kauffmann had asked her "to come into the office and talk anything over with him that [she] didn't think was just right," and that Kauffmann had asked with respect to the Union activities in the plant: "How is everything going along? * * * Have they settled down? * * * Is there any union talk?"

Under the facts and circumstances and the inferences to be drawn therefrom the Board was within its rights in concluding under the evidence that respondent had engaged in unfair labor practices in violation of Section 8(1) of the Act. The acts and conduct of respondent present a pattern expressive of management hostility to the rights of its employees to choose their labor affiliations independently of management interference; and respondent's attempts to discourage the employees from affiliating with the Union by statement evincing hostility to the Union, veiled threats of discharge, warnings that the plant would shut down because of the Union and interroga-

---

sofar as it alleges that the respondent has discriminated in regard to the hire and tenure of employment of Preston Hapgood and Edward A. Chapman."

[2] N. L. R. B. v. Central Steel Tube Co.,

8 Cir., 139 F.2d 489; Onan v. N. L. R. B., 8 Cir., 139 F.2d 728, 729; N. L. R. B. v. Lettie Lea, 9 Cir., 140 F.2d 243, 247; N. L. R. B. v. Glenn L. Martin-Nebraska Company, 8 Cir., 141 F.2d 371, 372.

tion of employees concerning Union affiliation and activities constitute well recognized forms of interference, restraint, and coercion, in violation of Section 8(1) of the Act. Cf. International Association of Machinists v. N. L. R. B., 311 U.S. 72, 78, 61 S.Ct. 83, 85 L.Ed. 50; H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514, 518, 61 S.Ct. 320, 85 L.Ed. 309; N. L. R. B. v. Brashear Freight Lines, Inc., 8 Cir., 119 F.2d 379, 381; American Smelting & Ref. Co. v. N. L. R. B., 8 Cir., 126 F.2d 680, 684, 685; Canyon Corporation v. N. L. R. B., 8 Cir., 128 F.2d 953, 955; Gamble-Robinson Co. v. N. L. R. B., 8 Cir., 129 F.2d 588, 590; N. L. R. B. v. Locomotive Finished Material Co., 8 Cir., 133 F.2d 233, 234; N. L. R. B. v. Harbison-Walker Refractories Co., 8 Cir., 135 F.2d 837, 838; N. L. R. B. v. Glenn R. Martin-Nebraska Co., 8 Cir., supra; N. L. R. B. v. Crown Can Co., 8 Cir., 138 F.2d 263.

■ Respondent urges that the Board's findings and order are in conflict with Boeing Airplane Co. v. N. L. R. B., 10 Cir., 140 F.2d 423, and points to a correspondence between the expansion of personnel at the Boeing plant and the expansion of personnel at its own, and to an alleged similarity of steps taken by both employers to assure the employees that they were free to join the Union. We do not have here, as in the Boeing case, a widespread understanding on the part of the employees, and a sincere disclosure to them of a management's honest policy of impartiality, neutrality and "resolution to prevent injection of the slightest managerial influence into the employees' collective organization." Cf. N. L. R. B. v. Duncan Foundry & Machine Works, Inc., 7 Cir., 142 F.2d 594, 597. In the Boeing case every effort was made to assure the employees of the company's strictly neutral attitude, and these assurances were given directly to the employees as a whole. While in the instant case there is some testimony to the effect that respondent's supervisory employees were notified not to interfere with Union activities, there is no showing that the employees collectively were notified of the respondent's alleged attitude. Even where assurances are made

to the employees, the actions of executives may be looked to to determine the policy of the company. Lip service to the policy and purposes of the Act is not sufficient. Birmingham Post Co. v. N. L. R. B., 5 Cir., 140 F.2d 638, 640. Under the Act Congress evinced its determination that industrial peace will be promoted if the steps of the employees toward collective bargaining are not hampered or interfered with by the employer, N. L. R. B. v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, and the employee is given the right to choose independently and without fear whether to become a Union member or not. It devolves upon the employer, therefore, to assume a position of honest impartiality and neutrality and to refrain from communicating its managerial prejudices in an effort to sway the employees from making a free choice, or pursuing it once it has been made.[3] This was a fairly new plant and one in which there was, as yet, no crystalization of employee labor affiliation. Under such circumstances, it is reasonable to assume that the employer knew the employees would be sensitive to overt or subtle communications of respondent's hostility toward the Union. Cf. Elastic Stop Nut Corp. v. N. L. R. B., 8 Cir., 142 F.2d 371, decided May 1, 1944; N. L. R. B. v. Faultless Caster Corp., 7 Cir., 135 F.2d 559, 561; International Ass'n of Machinists v. N. L. R. B., 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50; N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 589, 61 S.Ct. 358, 85 L.Ed. 368; Humble Oil Co. v. N. L. R. B., 5 Cir., 140 F.2d 777, 779. The promptness of respondent's steps to combat unionization in its plant belies its verbal assurances of its neutrality. From the evidence of respondent's disparaging remarks concerning the Union, its attempted surveillance, its open expressions of hostility towards unionization, the Board was justified in finding a breach of respondent's obligation under the Act and a violation of its mandate.

■ We find respondent's contention with respect to an alleged campaign of entrapment by the Union to be without merit. There is no basis in the evidence for an inference or conclusion that the employees incited anti-Union statements or employed

---

[3] Elastic Stop Nut Corp. v. N. L. R. B., Infra, 8 Cir., 142 F.2d 371; N. L. R. B. v. William Davies Co., 7 Cir., 135 F.2d 179, 181, certiorari denied 320 U.S. 770, 64 S.Ct. 82; N. L. R. B. v. Aluminum Products Co., 7 Cir., 120 F.2d 567, 571; N. L. R. B. v. Security, Etc., Co., 9 Cir., 136 F.2d 829; Rapid Roller Co. v. N. L. R. B., 7 Cir., 126 F.2d 452, 457, certiorari denied, 317 U.S. 650, 63 S.Ct. 45, 87 L.Ed. 523.

stratagems calculated to lead to that result. To the contrary, there is evidence that the initiative was taken by respondent in the matters leading to this proceeding. Such instances as the request by Nesbit to Schaper to come to his office and the circumstances under which Williams made the statements above described are illustrative, and tend to refute respondent's position. Respondent's contention that the action of the Board's regional representatives and the Union in refusing information requested by respondent as to the activities of certain of respondent's minor officials "would excuse respondent from correcting these abuses, if any existed, and absolved respondent of any liability therefor" is likewise without merit. Respondent contends "that it is only when the activities of minor officials in interfering with the Union go unrebuked and uncorrected by the respondent, after the respondent has knowledge of them, that the respondent is liable for them," but we do not hold that either the Board or the Union is required to oversee the employer's business or to keep the employer informed of the actions of those to whom the conduct of its business is entrusted and the principles of estoppel can not be applied against the Board to deprive the public of the protection of the Act. N. L. R. B. v. Baltimore Transit Co., 4 Cir., 140 F.2d 51, 55.

■ 2. Respondent contends that the Board's findings relating to the discharge of Schaper and Noeth were without substantial support in the evidence. We may not reweigh the evidence upon which the finding that the respondent discharged these employees because of their Union activities, is based, but are restricted to a determination whether the finding is based upon substantial evidence. N. L. R. B. v. Carter Carburetor Co., 8 Cir., 140 F.2d 714, 718. It appears from the evidence that the Union commenced its organizational drive in response to a request from certain of the employees, among whom were Schaper and Noeth. Both were active in securing bargaining authorization signatures for the Union and both wore Union buttons openly. On October 12, 1942, less than a month after the Union began its drive, Schaper and Noeth were discharged. Asserted reasons therefor were declines in production following the employees' Union affiliations, quarreling with Rice, the lead girl, insubordination, frequent failure to get to work on time, and others. But there was testimony, which, if believed by the Board, negatived the genuineness of such reasons. While the testimony was conflicting, the credibility of the witnesses and the inferences to be drawn from the testimony was for the Board. N. L. R. B. v. Chicago Steel Foundry, 7 Cir., 142 F.2d 306; N. L. R. B. v. Crown Can Co., 8 Cir., 138 F.2d 263, 267; N. L. R. B. v. Aluminum Products Co., supra; N. L. R. B. v. Security Warehouse & C. S. Co., 9 Cir., 136 F.2d 829, 834; N. L. R. B. v. Nevada Copper Co., 316 U.S. 105, 106, 62 S.Ct. 960, 86 L.Ed. 1305; Greenport Basin & Const. Co., v. N. L. R. B., 2 Cir., 132 F.2d 857; Locomotive Finished Material Co. v. N. L. R. B., 10 Cir., 142 F.2d 802; Utah Copper Co. v. N. L. R. B., 10 Cir., 139 F.2d 788, 790; N. L. R. B. v. Link-Belt Co., supra. Moreover, evidence tending to prove that the employer has openly expressed his hostility to Union members and voiced a desire to get rid of the particular workers because of their union affiliation is relevant upon the question of discriminatory discharge. N. L. R. B. v. Chicago Steel Foundry, supra. There was evidence that respondent's secretary, Kauffmann, requested employee Pfeiffer to sign an affidavit to the effect that Schaper and Noeth had solicited him on behalf of the Union during working hours and stated that "he would like to get rid of them" and that "if he could catch them or have anybody sign a signed affidavit they did [solicit] he had a chance to release them right now." That after Schaper and Noeth were discharged, Rice commented to employee Eckert that "she was glad she caused them to get fired because she didn't think we [the employees] were very patriotic for fooling with the Union." In view of the respondent's hostility to the Union, the activities of Schaper and Noeth on behalf of the Union and other facts and circumstances surrounding the discharges, the Board was justified in inferring that the employees were discharged discriminatorily. That there was evidence which might support contrary inferences or tends to render certain testimony suspect cannot avail respondent. It was within the province of the Board to consider and appraise petitioner's motives inferable from the evidence and to decide as it did. Carter Carburetor Corp. v. N. L. R. B., 8 Cir., 131 F.2d 927, 928.

"It must be remembered, in this connection, that the question involved is a pure question of fact; that, in passing upon it,

the Board may give consideration to circumstantial evidence as well as to that which is direct; that direct evidence of a purpose to violate the statute is rarely obtainable; and that where the finding of the Board is supported by circumstances from which the conclusion of discriminatory discharge may legitimately be drawn, it is binding upon the courts, as they are without power to find facts or to substitute their judgment for that of the Board." Hartsell Mills Co. v. N. L. R. B., 4 Cir., 111 F.2d 291, 293.

The Board could properly conclude in view of the circumstances surrounding the discharges, that respondent's alleged reasons were not the real ones, and that respondent was guilty of a violation of Section 8(3) of the Act. Cf. N. L. R. B. v. Glenn L. Martin-Nebraska Co., supra; N. L. R. B. v. Carter Carburetor Corp., 8 Cir., 140 F.2d 714; Onan v. N. L. R. B., supra; N. L. R. B. v. Central Steel Tube Co., supra; Carter Carburetor Corp. v. N. L. R. B., 8 Cir., 131 F.2d 927; Gamble-Robinson Co. v. N. L. R. B., 8 Cir., 129 F.2d 588; Canyon Corp. v. N. L. R. B., 8 Cir., 128 F.2d 953; N. L. R. B. v. Bradley Lumber Co., 8 Cir., 128 F.2d 768; N. L. R. B. v. Tovrea Packing Co., 9 Cir., 111 F.2d 626, certiorari denied, 311 U.S. 668, 61 S.Ct. 28, 85 L.Ed. 429; N. L. R. B. v. Columbia Products Co., 2 Cir.; 141 F.2d 687; N. L. R. B. v. Century Projection Co., 2 Cir., 141 F.2d 488; N. L. R. B. v. Gallup Am. Coal Co., 10 Cir., 131 F.2d 665.

▮ 3. Respondent attacks the Board's findings that Bertha Rice was a representative of management for whose conduct respondent was responsible. According to the testimony of Bertha Rice, she accepted employment with respondent in February, 1942, as a woodworker. In March or April of that year, Guy Williams told the girls working with Rice that "they were to take orders from me, that I was to tell them what to do, give them their work" and "from that time I had to * * * give them their work, tell them what to do, and I no longer did very much of the work myself." A few weeks later Kauffmann stated that "he thought I had the ability to become a good supervisor," and Kauffmann suggested that she take a special course in the methods of teaching new workers. The nature of Rice's duties did not change after she had completed the course. It is conceded that Rice considered herself a supervisor, and there is

evidence from which the Board could infer that the employees identified her with management, although not wholly accepting her as a supervisor. It is clear that Rice exercised general authority over the employees in her unit and was "in a strategic position to translate to [respondent's] subordinates the policies and desires of the management." International Ass'n of Machinists v. N. L. R. B., 311 U.S. 72, 80, 61 S.Ct. 83, 89, 85 L.Ed. 50. While she had no apparent right to hire or fire, and did not have a definitely established status as a supervisor, her position was such that her fellow employees would have just cause to believe she was a representative of management. The controlling consideration in cases of this kind is not one based on a "conventional representation of the master by the employee," Birmingham Post Co. v. N. L. R. B., supra [140 F.2d 640]; but rather, whether the coincidence of acts of hostility on the part of management and on the part of Rice, coupled with her general authority over her subordinates, inspired in the minds of the subordinates a feeling that there was a · unity and identification between Rice and the management. The Board, under the circumstances here involved, could reasonably infer that this was the case, and find employer liability for Rice's conduct under the Act. Cf. N. L. R. B. v. Glenn L. Martin-Nebraska Co.; supra; International Ass'n of Machinists v. N. L. R. B., supra; N. L. R. B. v. Link-Belt Co., supra; Gamble-Robinson Co. v. N. L. R. B., supra; N. L. R. B. v. Pacific Gas & Elec. Co., 9 Cir., 118 F.2d 780.

▮ 4. Respondent urges that the Board erred in rejecting impeaching testimony with respect to the arrests of Earl Pfeiffer, a Board witness, on charges of disturbing the peace, non-support and passing a bad check. No conviction for the latter two offenses was shown, and under the rules of evidence approved by this court, testimony relating to any of the arrests was inadmissible for impeachment purposes. Glover v. United States, 8 Cir., 147 F. 426, 8 Ann.Cas. 1184; Edwards v. United States, 8 Cir., 18 F.2d 402; Lawrence v. United States, 8 Cir., 18 F.2d 407; Middleton v. United States, 8 Cir., 49 F. 2d 538; Little v. United States, 8 Cir., 93 F.2d 401. Respondent points out circumstances which it contends should have properly required the Board to sustain the denial by the trial examiner of the motion to strike the testimony, but in doing so ig-

nores the significance of Section 10(b) of the Act, 49 Stat. 454, 29 U.S.C.A. § 160(b), which provides that "the rules of evidence prevailing in courts of law or equity shall not be controlling." N. L. R. B. v. Service Wood Heel Co., 1 Cir., 124 F.2d 470; N. L. R. B. v. Remington Rand, Inc., 2 Cir., 94 F.2d 862, 873, certiorari denied, 304 U.S. 576, 58 S.Ct. 1046, 82 L.Ed. 1540. The Board properly ruled as it did.

5. Respondent contends that the Board arbitrarily ignored testimony favorable to respondent and accepted testimony adverse to respondent where such testimony conflicted. The contentions are urged with respect to statements which the Board found respondent's executive and supervisory personnel had made in violation of the Act. In each case respondent has exhaustively analyzed the testimony and shown why in its opinion the testimony favorable to it should have been believed and the unfavorable testimony disbelieved. It argues strenuously that the unfavorable testimony was contradictory, inconsistent, fabricated and unworthy of belief, and that in accepting such testimony and rejecting the testimony favorable to it, the Board acted arbitrarily. It is undoubtedly true that a Board which with "studied design" ignores all the evidence adduced by the employer and views as truthful only the testimony of adverse witnesses, acts arbitrarily and not in accord with legal requirements. N. L. R. B. v. A. Sartorious & Co., 2 Cir., 140 F.2d 203, 205; N. L. R. B. v. Union Pacific Stages, Inc., 9 Cir., 99 F.2d 153, 177; N. L. R. B. v. Grieder Machine Tool & Die Co., 6 Cir., 142 F.2d 163, 165. "Testimony is the raw material out of which we construct truth and, unless all of it is weighed in its totality, errors will result and great injustices be wrought." N. L. R. B. v. Thompson Products, Inc., 6 Cir., 97 F.2d 13, 15. And Section 10(e) of the Act, 49 Stat. 453, 29 U.S.C.A. § 160 (e) which provides that "The findings of the Board as to the facts, if supported by evidence, shall be conclusive," does not, of course compel the courts to accept findings reached by accepting evidence presented by one side to the controversy with total disregard for other worthy evidence before the Board. N. L. R. B. v. Union Pacific Stages, supra. But we have carefully examined the testimony to which the Board gave credence, and find no such confusion, contradiction, patent fabrication or inherent improbability in the testimony as to justify a conclusion that the Board acted arbitrarily or erred in viewing the same as substantial evidence. The Board's decision shows that a careful study of the facts and circumstances and all the testimony was made by the Board, and presents a thoughtful consideration of the credibility of the testimony in question. The Board's conclusion, based on such careful consideration of the character and nature of the testimony and the prejudices, desires and motives of the witnesses, completely refutes any suggestion that the Board acted with "studied design", hostile to respondent, in passing on the credibility of the witnesses. While conflicts in the testimony are apparent, the findings of the Board are supported by substantial evidence, and it is idle to argue that the Board lacked power to rely on the testimony of certain witnesses in preference to others. The Board, and not the reviewing court, has the function of appraising conflicting evidence and determining which witnesses or line of testimony it will accredit. N. L. R. B. v. Lettie Lea, Inc., supra. The weight of evidence and the credibility of witnesses are "considerations with which we cannot concern ourselves." Carter Carburetor Corp. v. N. L. R. B., 8 Cir., 140 F.2d 714, 718; Elastic Stop Nut Corp. v. N. L. R. B., supra; N. L. R. B. v. Crown Can Co., 8 Cir., 138 F.2d 263, 267; N. L. R. B. v. Security Warehouse Co., 9 Cir., 136 F.2d 829, 834; N. L. R. B. v. Nevada Copper Co., 316 U.S. 105, 106, 62 S.Ct. 960, 86 L.Ed. 1305; Greenport Basin, Etc., Co. v. N. L. R. B., 2 Cir., 132 F.2d 857.

Respondent, in support of its contention that the Board arbitrarily ignored the testimony of witnesses favorable to it and accepted improbable testimony, points out instances in which the Board's findings were contrary to that of the trial examiner. But the Board is not required to uphold the findings of the trial examiner, and on the record before it the Board may accept or reject such findings. N. L. R. B. v. L. H. Hamel Leather Co., 1 Cir., 135 F.2d 71; N. L. R. B. v. Botany Worsted Mills, 3 Cir., 133 F.2d 876, certiorari denied 319 U.S. 751, 63 S.Ct. 1164, 87 L.Ed. 1705. The Board is authorized to make findings contrary to the findings of the trial examiner, and where there is substantial evidence to support the Board's findings, the court may not set them aside merely because the Board's view of the weight and credibility of the witnesses differed from that of

the trial examiner. Burk Brothers v. N. L. R. B., 3 Cir., 117 F.2d 686, certiorari denied 313 U.S. 588, 61 S.Ct. 1110, 85 L.Ed. 1543; N. L. R. B. v. Tex-O-Kah Flour Co., 5 Cir., 122 F.2d 433; N. L. R. B. v. Elkland Leather Co., 3 Cir., 114 F.2d 221, certiorari denied 311 U.S. 705, 61 S.Ct. 170, 85 L.Ed. 457.

We find no merit in respondent's argument that Williams' statements, as described above, were constitutionally privileged. Viewed in connection with other circumstances reflecting respondent's hostility to the Union, the statements were an integral part of respondent's design to interfere with the employees' freedom to seek Union affiliation under the Act, and fairly representative of the company's attitude. "While an expression of opinion on labor matters may be protected when such utterances do not constitute coercion under the Act," Elastic Stop Nut Corp. v. N. L. R. B., supra [142 F.2d 378], the statements amounted to restraint and coercion, and as such, could not be afforded constitutional protection. N. L. R. B. v. Virginia Electric & Power Co., 314 U.S. 469, 62 S.Ct. 344, 86 L.Ed. 348; N. L. R. B. v. Pick Mfg. Co., 7 Cir., 135 F.2d 329, 331; N. L. R. B. v. American Tube Bending Co., 2 Cir., 134 F.2d 993, 994, 146 A.L.R. 1017, certiorari denied 320 U.S. 768, 64 S.Ct. 84; N. L. R. B. v. Schaefer-Hitchcock Co., 9 Cir., 131 F.2d 1004, 1007; N. L. R. B. v. Sunshine Mining Co., 9 Cir., 110 F.2d 780, 786, certiorari denied, 312 U.S. 678, 61 S.Ct. 447, 85 L.Ed. 1118. "The determination of the category into which the remarks fell was a question of fact for the Board, N. L. R. B. v. Virginia Electric & Power Co., supra, and the Board's finding on the fact may not be disturbed." Electric Stop Nut Corp. v. N. L. R. B., supra.

Respondent has urged that the Board "refused to consider" evidence which respondent believed sufficient to overcome the testimony and evidence presented by the Board as to its unfair labor practices and discriminatory discharges. But the Board had before it such evidence, and there is no showing that it failed to receive proper consideration. Respondent, in effect, asks us to probe the mental processes of the Board's officials, and this we cannot do. As pointed out in N. L. R. B. v. Air Associates, 2 Cir., 121 F.2d 586, 591, "the Supreme Court, during a period of more than thirty years, has often condemned, as both an impractical and unwise judicial undertaking, the 'probing of the mental processes' of officials engaged in reaching decisions, pursuant to statute, on the basis of evidence presented to them."

The order of the Board is in appropriate form and is consistent with the Board's findings of fact, and the petition for enforcement is granted. International Ass'n of Machinists v. N. L. R. B., supra; Onan v. N. L. R. B., supra.

SANBORN, Circuit Judge, concurs in the result.