## NATIONAL LABOR RELATIONS BOARD v. THOMPSON PRODUCTS, Inc.

### No. 7863.

Circuit Court of Appeals, Sixth Circuit.

May 10, 1938.

ALLEN, Circuit Judge, dissenting in part.

———◆———

Ernest A. Gross, of Washington, D. C. (Charles Fahy, Robert B. Watts, Laurence A. Knapp, and Marcel Mallet-Prevost, all of Washington, D. C., on the brief), for petitioner.

H. E. Smoyer, of Cleveland, Ohio (Stanley & Smoyer, of Cleveland, Ohio, on the brief), for respondent.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This case is before the court on petition of the National Labor Relations Board to enforce its order issued against respondent pursuant to section 10(c) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq. and section 160(c) and the cross-petition of the respondent for review. Jurisdiction is based on section 10(e) of the act, 49 Stat. 453, 29 U.S.C.A. § 160 (e).

The respondent is an Ohio corporation having its principal office and place of business in Cleveland, Ohio. The Board's order grew out of a complaint issued against the respondent at the instance of the United Automobile Workers of America, a national labor organization. Issues were joined and proof heard before a trial examiner designated by the Board, whose intermediate report showed the respondent had violated section 8(1), (3) of the act, 49 Stat. 452, 29 U.S.C.A. § 158(1), (3). The respondent excepted to the examiner's report and was overruled by the Board.

The finding of facts of the Board is not in the proper form. It has mingled therein statements of witnesses and expressions of opinion. No reference should be made to the evidence nor any discussion injected into the ultimate finding of facts upon which the Board rests its order. There should be a clean-cut statement of the ultimate facts without incorporating therein the evidence or the reasoning by which the Board arrived at its finding. If the Board desires to discuss or emphasize any part of the evidence or give its reason for its findings, it should do so in the form of an opinion or memorandum which should not be incorporated into, or connected with, the special finding of facts.

The respondent does not attack the form of the Board's finding, but rests its case on a cross-petition for review and contends there is no substantial evidence to support the finding of the Board or its order.

After discarding evidence and expressions of opinion, the facts found by the Board are substantially as follows:

The respondent is an Ohio corporation engaged, together with various wholly or partially owned subsidiaries and affiliates, in the manufacture, sale, and distribution of valves, pistons, rods, and similar metal products used in the automobile industry. It owns and operates manufacturing plants at Cleveland, Ohio, and Detroit, Mich. The greater part of the raw materials used at the Cleveland plant, the one involved in these proceedings, are purchased by respondent outside of the state of Ohio, and more than half of its manufactured products shipped outside the state.

Respondent maintains warehouse stocks in various cities throughout the United States and, through a subsidiary, in Toronto, Canada. Its products are handled by jobbers and dealers in all parts of the United States. The employees involved in these proceedings worked in its Cleveland plant.

The United Automobile Workers of America International Union is a national labor organization of approximately 350,000 members, workers in automobile and automobile accessory plants. In June, 1931, it affiliated with the Committee for Industrial Organization.

On April 2, 1937, representatives of the Union circulated handbills inviting all employees of the respondent to attend an open meeting in Cleveland, Ohio, to be held on Sunday, April 4, 1937, and about two hundred attended, some of whom were members of an Employees' Association.

A representative of the union addressed the meeting and was heckled. At the end of his address those not wishing to join the union were invited by him to leave the room. Some immediately retired; eighteen stayed, and others, one of whom was an employee in the personnel office of the respondent, and were thus able to identify those remaining, lingered at the door. Among those who stayed with the union group were George Casterline, Herman Schneider and Charles M. Schuller.

The managing officials of the respondent's Cleveland plant knew of the circulation of the handbills, the subsequent meeting of employees, and the result of their conference.

George Casterline was a forge pressman with a seniority rating of seven years and had been employed by the respondent since 1928 with infrequent layoffs due to slack business. He had satisfactorily discharged his duties and had been promoted to the position of pressman at an advanced wage about eighteen months before April 4, 1937. He became a member of the union about April 1, 1937, and was discharged by respondent's employment manager on April 6, 1937. Casterline, during his temporary layoffs, had been employed as a barker for a side show at the Great Lakes Exposition.

On March 6, 1937, the respondent gave a testimonial dinner to employees with a service record of five years or more, and as a part of the evening's entertainment free beer was furnished for drinking guests and hard liquor was brought by them. Pugilistic boxing matches were held, music for dancing was provided by an orchestra, and food and decorations prepared by a caterer. Casterline, among others, appropriated to his own use, without the consent of the owner, some decorations and personal property belonging to the caterer. The specific property taken by him was an ornamental lamp with a fair market value of 50 cents. He had partaken freely of beer during the evening and, when charged with taking the lamp by one of respondent's personnel employees, offered to pay for it or return it, and did abandon it in the banquet hall.

The employee who charged Casterline with taking the lamp reported his conduct about April 6, 1937, to respondent's director of personnel, who sent for him and discharged him. No other employee was discharged for taking property at the party.

Herman Schneider, twenty years of age, was first employed by respondent on November 17, 1936, and was promoted shortly thereafter from a pointer to a grinder, and received four wage increases. He was receiving 53 cents an hour when discharged.

He was an applicant for a promotion which he did not receive and about which he expressed his disappointment and showed resentment, claiming unfair treatment. On April 5, 1937, at the lunch counter on the property of the respondent, and during work hours, he engaged in a loud, heated argument over the superior merits of the union compared to those of the Employees' Association. Schneider's supervisor over-

heard his loud talking and immediately sent for him, accused him of arguing about the union on company time and property, and inquired the reason for his dissatisfaction. Schneider reiterated his disappointment and chagrin at failure to be promoted but denied arguing about the union. At the conclusion of the conversation, the supervisor told him he was discharged, and, when Schneider expressed fear of his father's anger if he learned he had lost his position, he was temporarily laid off and left the plant.

He returned April 14, 1937, and asked to be put back to work, but the supervisor stated that his services were no longer needed and that he was discharged.

Charles M. Schuller, twenty years of age, began work for the respondent on October 6, 1936, as a grinder of valve stems at a wage of 39 cents an hour and in nine days received an increase to 45 cents. He progressed rapidly in his work, receiving several salary increases and praise by the management, and at the time he was discharged was receiving 71 cents an hour. While working on the night shift on April 5 and 6, 1937, due to the faulty adjustment of his machine, of which he was aware and had complained, for the first time during his employment, he destroyed raw material, which had to be scrapped. On April 8th, without any further destruction of material, he was discharged by his department supervisor, who chided him at that time about his sympathy with the Union. On the date of his discharge, Schuller advocated the cause of the union and solicited employees to join.

From the foregoing facts, the Board concluded that Casterline, Schneider and Schuller were discharged because of their union activities, and that respondent by its conduct had interfered with, restrained and coerced its employees in the exercise of their right to organize.

The Board ordered the respondent to cease and desist from interfering with, restraining or coercing its employees in any manner in the exercise of their right to self-organization or to form or join labor organizations, or to bargain collectively through representatives of their choosing, and to cease and desist from discouraging membership in the United Automobile Workers of America or any other labor organization of its employees by discrimination in regard to hire or tenure or term or condition of employment.

The Board also ordered the respondent to reinstate immediately Casterline, Schneider and Schuller to their former positions, without prejudice to their seniority, and to compensate each of them for any loss of pay suffered by reason of his discharge, measured by a sum of money equal to that which he would normally have earned, less any amount earned in the meantime.

The Board also ordered the respondent to post notices in all departments of its place of business in Cleveland, stating in substance that it would cease and desist from the practices found objectionable and further that its employees were free to join or assist the United Automobile Workers Union or any other labor organization of their own choosing, and that such notices remain posted for at least thirty consecutive days.

Section 10(e) of the act, 49 Stat. 453, 29 U.S.C.A. 160(e), provides that the finding of the Board as to the facts, if supported by evidence, shall be conclusive.

In applying such statutory provisions, the court will not review the evidence or weigh the testimony and will approve the order of the Board unless clearly improper or unsupported by substantial evidence. Washington, Virginia & Maryland Coach Company v. Labor Board, 301 U.S. 142, 147, 57 S.Ct. 648, 650, 81 L.Ed. 965.

"Substantial evidence" means more than a mere scintilla. It is of substantial and relevant consequence and excludes vague, uncertain, or irrelevant matter. It implies a quality of proof which induces conviction and makes an impression on reason. It means that the one weighing the evidence takes into consideration all the facts presented to him and all reasonable inferences, deductions and conclusions to be drawn therefrom and, considering them in their entirety and relation to each other, arrives at a fixed conviction.

The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary power. Testimony is the raw material out of which we construct truth and, unless all of it is weighed in its totality, errors will result and great injustices be wrought.

The Wagner Labor Relations Act is a young living thing and we must clothe it carefully, not in a straitjacket. There are many ameliorations of labor conditions which can be effected by conference and discussion between employers and em-

ployees. Through long ages men, women and children who work have been in the background and sometimes seemed forgotten by the public and their employers. The act here involved seeks to remedy this condition.

When articles were manufactured in small shops requiring only a few employees, the employer knew those working for him; and was able to judge the merits of each, both as a man and as a workman, and the contact was close, each rendering aid to the other in difficulties. The establishment of large manufacturing plants, requiring the work of thousands, makes it impossible for employer and employee to enjoy such relationship. Under such conditions employees become more like human machines to their employer and he only a paymaster to them.

There are employers who regard labor as their legitimate prey whom they are justified in exploiting with little recompense. There are also labor organizations which feel justified in wresting everything possible from the employer regardless of method pursued or services performed. Many disagreements arise between capital and labor because of a lack of sympathetic understanding of common problems. When their representatives meet together and talk over matters of mutual interest, however diverse the points of view, misunderstandings and distrust in many cases disappear.

It is the duty of courts and administrative boards to study the meaning and purpose of the acts of the Congress and, when possible, give to them a rational and beneficial interpretation.

The Labor Relations Act undertook to establish a medium by which employer and employee, by representatives of their own choosing, could meet, discuss, and solve differences, thereby preventing friction and industrial strife. The end to be accomplished was an agreement without coercion or intimidation.

Section 7 of the act, 49 Stat. 452, U.S. C.A. title 29, § 157, provides that employees shall have the right to self-organization, to form, join or assist labor organizations, bargain collectively through representatives of their own choosing and engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection.

Section 8 of the act, 49 Stat. 452, 29 U.S.C.A. § 158, provides that it shall be unfair labor practices for an employer to interfere with, restrain or coerce employees in the exercise of the rights guaranteed under section 7 to dominate or interfere with the formation or administration of any labor organization, contribute financial or other support to it, discriminate in regard to hire or tenure of employment, or any terms of condition of employment or to encourage or discourage membership in any labor organization.

An employer may properly refuse to continue in his employ any person who has shown himself to be dishonest, incompetent, inefficient, negligent or unfaithful to his employer's interest or otherwise unfit for the service in which he is engaged. The National Labor Relations Act does not abrogate any of these prerogatives, nor can employees use it as a shield for dishonesty or incompetent and inefficient service.

The respondent employed in its Cleveland plant approximately 1,500 persons. Handbills were distributed by the union representatives inviting all of them to attend the meeting. The respondent did not interfere with the attendance of the employees nor send any representatives to the meeting. The witnesses testified the attendance ranged from 75 to 200. The Board, in its finding, used the maximum number. The organizer for the union requested those who did not intend to join the union to leave. The record shows approximately eighteen remained. Casterline, Schneider and Schuller took no active part in the meeting. There is nothing in the record showing that the managing officer of the respondent was aware that any one of them was a member of the union before discharge.

At two previous "Old Guard" parties property had been stolen or damaged to a considerable extent and, before the one of 1937 was held, the management posted notices in the plant, calling attention to the loss of property theretofore and requesting that unusual care be taken at this meeting to prevent a recurrence. Casterline's testimony is vague as to whether he read the notice, but he freely admits taking the lamp with the intent to appropriate it to his own use. There is no evidence in the record of any union activities on his part, except the attendance at the Sunday meeting. The Board in its finding lays emphasis on the small value of the lamp. The value of the thing taken is of but little importance; that was a matter for the management to decide. To hold that Casterline was discharged because of his union activities is

to give weight to an inference in the teeth of uncontradicted testimony to the contrary.

Schneider admits he was disappointed because he failed to obtain a promotion, felt he had been mistreated, and after this engaged in a loud heated argument with other employees on the premises of the company, over the merits of the employees' association compared with the union. Such conduct would lead to inefficiency and disorganization of the respondent's personnel.

Schuller admits he continued to work with a machine knowing it was out of order and would destroy raw material, though he insists this was because the mechanic, Hornak, would not adjust it. He testifies his work was satisfactory and the Board so found, but is contradicted in this by his inspector and also by two other witnesses.

He also testified he discussed the union with some of the men inside the plant before the Sunday meeting and engaged in some activity on its behalf after the meeting.

Interference with the right of an employer to determine when an employee is inefficient should not be lightly indulged in when applying the Labor Relations Act and, where the employee admits he is performing his work negligently, the evidence should be strong and convincing that he was discharged for union activities before reinstatement by an administrative board.

There is a scintilla of evidence in this case that the union activities of the three employees were factors in their discharge but, from their own testimony, the employer would have been justified in discharging them had there been no effort to organize its employes in a union. The Board's finding in this case tends to destroy the purpose of the Labor Relations Act and to promote discord between employer and employee instead of harmonious and joint discussion of their difficulties, and is not sustained by substantial evidence. The petition will therefore be denied and decree entered accordingly.

SIMONS, Circuit Judge (concurring).

It would undoubtedly greatly ease the burden upon the court if the Board in its findings of fact would follow the practice of other administrative tribunals whatever, if any, may be its obligation in this respect. Cf. National Labor Relations Board v. Remington Rand, Inc., 2 Cir., 94 F.2d 862, 865. Without expressing any view upon the sociological discussion in the opinion, I concur in the result, in so far as it is based upon lack of substantial evidence to sustain the findings and the order.

ALLEN, Circuit Judge (dissenting in part).

I am unable to concur in the decision as to the discharge of Casterline and Schuller. Schneider's admission of resentment because he had not secured a promotion strongly supports the employer's claim that he was discharged for inefficiency and slump in his work; but Casterline and Schuller each had excellent work records, and the reasons given by the employer for their discharge are unsubstantial. The fact that Casterline stole a fifty-cent lamp at the party of the employees was not given as a cause of complaint against him before the organization meeting, although the party occurred about a month before then. No one else was discharged for this cause, although property was taken at the party by other employees. Schuller had received four individual raises in pay between October 6, 1936, and April 6, 1937, when he was discharged. His foreman stated that it was possible that not all the scrap made on the evening of April 5th, which was blamed to Schuller, was actually made by Schuller. It is significant that when Schuller was discharged his sympathy for the Union was thrown up to him by the supervisor of his department.

While there is no evidence that the employer actively tried to prevent the holding of the meeting for the formation of a Union at this plant, it was not friendly to this organization. The meeting, attended by Casterline and Schuller, was the first open meeting held, and was for the express purpose of organizing within the plant. Only eighteen out of some fifteen hundred of the employees remained at it for organization purposes, and they of course were marked men. Casterline and Schuller were among them, and each was discharged within a few days later. This constitutes in my opinion substantial evidence of discharge because of Union membership and activity, and hence the findings of the Board are conclusive upon these matters. Title 29 U.S. C.A. § 160(e); Agwilines, Inc. v. National Labor Relations Board, 5 Cir., 87 F.2d 146.