**OTIS & CO. v. SECURITIES AND EX-
CHANGE COMMISSION et al.**

No. 10058.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 17, 1948.

Decided June 1, 1949.
Writ of Certiorari Granted Oct. 17, 1949.

See 70 S.Ct. 89.

See also 84 F.Supp. 395.

Messrs. Thurman Arnold, Washington, D.C. and Joseph L. Weiner, New York City, with whom Messrs. Abe Fortas, Milton V. Freeman, and Norman Diamond, Washington, D. C., were on the brief, for appellant.

Mr. Louis Loss, Associate General Counsel, Securities & Exchange Commission, Washington, D.C., with whom Messrs. Edward H. Cashion, E. Russel Kelly, C. J. Odenweller, Jr., and Alfred Hill, Attorneys, Securities & Exchange Commission, Washington, D.C., were on the brief, for appellees.

Before STEPHENS, Chief Judge, and WILBUR K. MILLER and PROCTOR, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Otis & Company, an investment banking house, was one of three underwriters which contracted to purchase an issue of common stock of Kaiser-Frazer Corporation. Among the conditions precedent in the underwriting agreement was that on February 9, 1948, the closing day, there should be no material litigation pending against Kaiser-Frazer. On the morning of that day, and before the purchase of the stock had been consummated, one Masterson sued Kaiser-Frazer in a state court in Detroit, seeking to enjoin the contemplated sale. Assigning the pendency of that suit as one of its reasons for so doing, Otis cancelled the underwriting contract.

On February 13, 1948, Kaiser-Frazer sued Otis in a New York state court charging that it had fraudulently caused Masterson to file the Detroit suit in order to terminate the underwriting agreement.

Five days later the Securities and Exchange Commission ordered its staff to make what it termed a "private investigation" to determine whether certain antifraud provisions of the Securities and Exchange Act of 1934 [1] had been violated by the underwriters. Thereafter, and on March 23, 1948, the Commission ordered a public investigation to be made. Pursuant to that order extensive hearings were conducted at which Otis was allowed to observe but was not permitted to cross-examine witnesses nor to introduce evidence.

It was indicated during the investigation that Otis or Cyrus S. Eaton, its controlling stockholder, had consulted Harrison and Hull, attorneys at law of Cleveland, Ohio, concerning the Masterson suit. Because of that indication the Commission subpoenaed Harrison and Hull, who declined to give the name of their client until compelled to do so by the United States District Court at Detroit after the Commission instituted therein a subpoena enforcement proceeding. They then disclosed that their client was Eaton. After much additional evidence had been taken in various cities, the investigation was reconvened in Washington and Harrison and Hull were again called as witnesses. They refused, on the ground of attorney-client privilege, to testify concerning the communications between them and Eaton. The Commission directed its presiding officer to rule that evidence already received made a prima facie showing that Eaton had consulted the attorneys concerning the perpetration of a fraud, and that therefore the attorney-client privilege was unavailable. Harrison and Hull continued to decline to answer.

Following this, and on June 25, 1948, the Commission filed a complaint in the United States District Court for the District of Columbia praying that Harrison and Hull be required to appear before the Commission or its hearing officer to answer questions concerning conversations between them and their client, and their activities in his behalf relating to the subject matter of

---

[1] 15 U.S.C.A. § 78a et seq.

the investigation, and any other questions material to the investigation except those the answers to which might be self-incriminatory. Eaton and Otis were permitted to intervene.

The Commission recited in the complaint its belief that evidence in the record of its public investigation amounted to a prima facie showing that Eaton had consulted the attorneys in connection with the filing of a collusive and fraudulent lawsuit. In support of its complaint, the Commission filed the affidavit of one of its staff which purported to set forth the evidence in the record regarded by the Commission as establishing the prima facie fraud. Later the Commission offered the entire record of its public investigation, the transcript of which contained more than five thousand pages.

After extensive argument, District Judge Morris filed an opinion in which he held that the evidence which was before the Commission and before him, together with all reasonable inferences to be drawn therefrom, did not make "the requisite prima facie showing of fraud to pierce the attorney-client privilege * * *." Accordingly the District Court ordered, on October 28, 1948,

" * * * That the order sought by the plaintiff Securities and Exchange Commission to enforce the subpoenas directed to the defendants in so far as they call for testimony and evidence relating to communications with their client Cyrus S. Eaton or require a disclosure of such communications be and it is hereby denied, * * *"

After the case had been argued before Judge Morris, but long before he had decided it, the Securities and Exchange Commission on August 11, 1948, entered an order entitled "In the matter of Otis & Company, 2000 Terminal Tower Building, Cleveland, Ohio," which recited at length the history of the underwriting agreement, and which included the following:

"The Commission, as the result of a public investigation, has obtained information which tends, if true, to show that:

* * * * * *

"H. The underwriting agreement provided that it could be terminated by the underwriters if at the time for settlement any material litigation were pending or threatened against K-F, except as disclosed by the registration statement. For the purpose of evading its obligations under the underwriting agreement through this provision, the registrant through Eaton caused a lawsuit against K-F to be filed on February 9, 1948, before 10:00 A. M. in the Circuit Court for the County of Wayne, Michigan. At the time and place for settlement the registrant refused to consummate the underwriting agreement and asserted that it was released from its obligations thereunder because of the lawsuit. The registrant omitted to state to K-F, the co-underwriters, and purchasers that it had caused the said lawsuit to be filed."

The order of August 11 directed that for the purpose of determining whether to suspend or expel Otis from membership in the National Association of Securities Dealers, Inc., a hearing before the Commission or its designated officer be held on September 20, 1948. Upon the application of Otis and Eaton, Judge Letts of the District Court enjoined the Commission from taking any action whatever pursuant to its order of August 11, 1948, pending the decision of Judge Morris. A portion of the recital of Judge Letts' order was as follows:

" * * * it appearing that the holding of such a hearing may involve interference with the jurisdiction of this Court in the above entitled matter, and it further appearing that it is necessary to protect the jurisdiction of this Court,

"It is hereby ordered, * * *"

That injunction expired by its terms on October 28, 1948, when Judge Morris entered a final order. Within a few hours after its entry, the Commission activated its order of August 11, 1948, by directing that a hearing commence on November 15, 1948,

" * * * to determine whether to revoke or suspend the broker-dealer registration of Otis & Company, and whether to suspend or expel the said company from membership in the National Association of Securities Dealers, Inc., * * *"

On November 10, 1948, Otis sued the Commission in the United States District Court for the District of Columbia to enjoin it from proceeding pursuant to its orders of August 11 and October 28, 1948,

"* * * insofar as those orders relate to or involve the termination of the underwriting agreement between plaintiff and Kaiser-Frazer Corporation, or the alleged instigation of a stockholder's derivative suit for the alleged purpose of avoiding plaintiff's obligations under said underwriting contract; * * *"

It prayed

"That the Court declare that the judgment of this Court of October 28, 1948, is binding as res judicata on the defendant Commission and that it is without power to conduct the proposed inquiry into the alleged instigation of the Masterson suit."

The complaint related the story of the whole matter and, with respect to the hearing set for November 15, contained the following allegation:

"27. In said hearing the Commission proposes to reintroduce the evidence obtained by it in the so-called public investigation which it has already held to constitute prima facie proof that the Masterson suit was inspired by plaintiff through said Eaton, and again to pass upon that evidence. The Commission proposes to do this despite the fact that this Court, through Judge Morris, has determined that such evidence does not constitute even a prima facie showing thereof. On information and belief, plaintiff alleges that the Commission does not have and cannot produce any evidence in addition to that in the record of its so-called public investigation which has heretofore been passed upon by this Court. (The Commission's order of August 11, 1948, contains allegations not considered in the S.E.C. action; as to those matters no

relief is here sought if properly severed for hearing.)"

The Commission moved to dismiss the complaint on the ground "(a) that the Court lacks jurisdiction over the subject matter and (b) that the complaint fails to state a claim against the defendants upon which relief can be granted." The District Court dismissed the complaint and this appeal followed.

■ The applicability of the doctrine of res judicata is therefore the determining factor in the case. Stated generally, that doctrine is that a right, question, or fact which is a ground of recovery and which was distinctly put in issue and directly determined by a court of competent jurisdiction, cannot be disputed in a subsequent suit between the same parties or their privies; and though the second suit be on a different cause of action, the right, question or fact determined in the first action must be taken as conclusively determined between the same parties and their privies, so long as the judgment in the first suit remains unmodified.[2]

In ascertaining whether the doctrine of res judicata is applicable here, we must see whether (a) the parties are the same; (b) whether the question of fact involved in the Commission's proposed hearing[3] was distinctly put in issue before the District Court in the subpoena enforcement suit and, if so, whether it was directly determined by the court.

The parties are, of course, the same; for in the suit against Harrison and Hull, the Commission was plaintiff and Eaton and Otis became parties by intervention, and in the proceeding proposed by the Commission in its orders of August 11 and October 28, Otis is the respondent and the Commission itself is the complainant.

In determining whether the issue decided by the District Court in the subpoena

[2] Tait v. Western Maryland Railway Co., 1933, 289 U.S. 620, 623, 53 S.Ct. 706, 77 L.Ed. 1405; United States v. Moser, 1924, 266 U.S. 236, 242, 45 S.Ct. 66, 69 L.Ed. 262; Deposit Bank of Frankfort v. Board of Councilmen of the City of Frankfort, 1903, 191 U.S. 499, 514, 24 S.Ct. 154, 48 L.Ed. 276;

Southern Pacific Railroad Co. v. United States, 1897, 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355.

[3] That question of fact is, did the record of the Commission's public investigation contain substantial evidence showing that either Eaton or Otis fraudulently inspired the Masterson suit?

enforcement case is the same issue which the Commission desires to relitigate before itself, confusion will be avoided if care is used in distinguishing between the question which was actually before the court and a somewhat kindred question which was not before the court; and in ascertaining and defining the issue which the Commission desires to consider in a new hearing.

As to the latter, the appellee says in its brief that "The issue in the pending administrative proceeding * * * is whether the appellant has in fact been guilty of fraudulent conduct in connection with the filing of the Masterson suit." The statement is incorrect. It ignores the allegation of the complaint to the effect that the Commission will have no new evidence and that, therefore, the issue in the pending administrative proceeding is whether the evidence taken in the prior public investigation showed that the appellant was in fact guilty of fraudulent conduct in connection with the filing of the Masterson suit. The appellee's misunderstanding of the question before the court when the motion to dismiss was considered, is further evidenced by this statement in its brief:

"The fact is, of course, that, regardless of what the appellant alleges in its complaint as to the availability of new evidence, no one can say at this time what evidence will be introduced in the adversary administrative proceeding."

Quite to the contrary, the allegation of the complaint that no new evidence would be available at the adversary administrative proceeding must be accepted as true, for the purpose of considering the motion to dismiss.

The District Court in its opinion in the subpoena enforcement action succinctly stated the issue before it when it said,

"The Court, in these proceedings, is not required, nor would it be proper, to make findings as to whether or not the fraud charged was perpetrated, but only to determine whether or not the evidence in the record, without more, constitutes a prima facie showing of such fraud."

We approve and emphasize the trial judge's determination that the issue of fraud vel non on the part of Eaton or Otis in connection with the Masterson lawsuit was not before the District Court in the subpoena enforcement proceeding. The quite different question, which was squarely presented and distinctly determined in the negative, was this: did the record of the Commission's public investigation contain prima facie evidence that the Masterson suit was fraudulently inspired by Eaton or his company? This clear distinction between what was not decided by the court in the subpoena enforcement case and what actually was decided there is of paramount importance here, although in argument it was often ignored or treated as immaterial.

With the true issue decided by the court thus recognized and isolated, it becomes necessary to find whether the Commission intended in its new hearing to re-examine the question whether its public investigation had developed proof of the fraud which it charged against Otis and Eaton, in the face of the court's ruling that that evidence did not make a prima facie showing of such fraud. The answer is to be found in the complaint and its exhibits. The Commission's order of August 11, which is one of the exhibits, contains the following:

"The Commission, as the result of a public investigation, has obtained information which tends, if true, to show that:

* * * * * *

"H. * * * For the purpose of evading its obligations under the underwriting agreement through this provision, the registrant [Otis] through Eaton caused a lawsuit against K-F to be filed on February 9, 1948, before 10:00 A. M. in the Circuit Court for the County of Wayne, Michigan", and continues by saying the Commission deems it necessary and appropriate that proceedings be instituted to determine whether the statement just quoted, among others, is true; and to determine whether it is necessary or appropriate to suspend or expel Otis from membership in the National Association of Securities Dealers, Inc.

It is thus apparent from its order that the Commission intended and intends to examine the question of fraud. It is moreover established by the pleadings that in its projected reconsideration of the fraud question, the Commission proposes to reintroduce the evidence obtained by it in its public investigation, and that the Commission does not have and cannot produce any evidence in addition thereto, since the appellant's allegation to that effect is admitted by the Commission's motion to dismiss the complaint.

█ Under the doctrine of res judicata, it must therefore be regarded as established, as between Otis and the Securities and Exchange Commission, that the evidence gathered by the Commission in its public investigation did not and does not amount to a prima facie showing that either Eaton or Otis fraudulently caused the Masterson suit to be filed.

It is beside the point to say in argument, as does the Commission, that there may be additional evidence and that the allegation of the complaint to which we have referred is "a remarkable bit of clairvoyance on the appellant's part". Be that as it may, it is alleged and not denied that the Commission does not have and cannot produce any additional evidence so, on the motion to dismiss, the District Court was confronted with a complaint which clearly showed the Commission about to determine anew an issue already decided by the court's valid and subsisting judgment. Consequently, instead of being immaterial as the Commission asserts, the uncontroverted allegation that there will be no more evidence is of extreme importance in this case, as it sharply shows that the Commission is about to examine the identical evidence considered by the court with respect to the alleged fraud in the Masterson suit.

Under circumstances such as those in this case, the exact question answered by the District Court in the subpoena enforcement proceeding could not be reexamined, in a suit between the same parties, by that or any other court. Whether it can be done by an administrative body is a question to which we now turn.

One of the reasons assigned by the appellee for its contention that the doctrine of res judicata does not apply here is its theory that the Myers case[4] and subsequent Supreme Court decisions "* * * most assuredly set up a different rule to govern the relationship between courts and administrative agencies from the traditional rule which (subject to the important limitation in Section 265 of the Judicial Code) governs the relationship of courts among themselves."

As we read this portion of the appellee's brief, the argument is that, although a federal court has power to protect its decrees by enjoining relitigation of the same issues in another court, the Supreme Court has held a federal court does not have power to protect its decrees by enjoining relitigation of the same issues by an administrative agency. The paragraphs of the appellee's brief from which we deduce that its contention is as we have just stated are shown in the margin.[5] As shown by our discussion of the Myers and

4 Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638.

5 "As a matter of fact, even *within* the judicial system, the Supreme Court recently held that the power of a federal court to protect its decrees by enjoining relitigation of the same issues elsewhere is qualified by an important exception in the form of Section 265 of the Judicial Code (36 Stat. 1162, 28 U.S. C. § 379), which prohibits the staying of proceedings in state courts. Toucey v. New York Life Insurance Co., 1941, 314 U.S. 118 [62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967.] The Myers doctrine rests upon generally similar considerations; for it recognizes that, in the familiar statutory provisions vesting primary regulatory jurisdiction in administrative agencies and exclusive review jurisdiction in designated courts, the Congress, no less than in Section 265 of the Judicial Code, has evinced an intention to render inapplicable the traditional remedy of the injunction. It is noteworthy that both in the Toucey case and in the Myers case the Supreme Court emphasized that the unavailability of the injunction did not deprive litigants of any substantive

Oklahoma Press cases later in this opinion, the doctrine of res judicata was not involved in either of those cases. As we understand them, those decisions hold that the progress of an administrative proceeding may not be interrupted by an injunction to enable a court to inquire into the agency's interlocutory determination of a statute's coverage. The quotation from the appellee's brief shown in the margin says: " * * * in the Myers case the Supreme Court emphasized that the unavailability of the injunction did not deprive litigants of any substantive rights, since claims of res judicata and lack of jurisdiction are always available as defenses."

We have been unable to find a statement of that tenor in the Myers opinion, nor have we discovered any reference in it to res judicata. Our conclusion, therefore, is that the Supreme Court has not held that a court cannot protect its decrees by enjoining the relitigation of the same issues between the same parties before an administrative agency.

■ No other reason has been suggested, and none is apparent to us, for holding that an administrative body which submits a legal question to a court of competent jurisdiction is not bound by its judgment. The rule is otherwise, as was held in George H. Lee Company v. Federal Trade Commission.[6] In that case the United States brought a libel proceeding in a district court to condemn 47 packages of "Gizzard Capsules", manufactured by George H. Lee Company. The government charged that the product was misbranded in that the labels and circulars contained false and fraudulent statements as to the properties of the product. The District Court held that the challenged statements were not false. Thereafter the Federal Trade Commission issued its complaint charging, George H. Lee Company with the use of unfair methods of competition in interstate commerce "by soliciting the sale of and selling 'Gizzard Capsules' upon 'extravagant, deceptive, misleading and false statements regarding the therapeutic value, efficacy and effect' of its product. * * * "

The Lee Company moved to strike so much of the complaint as was based upon representations as to the efficacy of its product on the ground that in the libel proceeding the falsity of such representations was an issue, and that the court in its decree had determined the product to be efficacious for the purpose for which it was manufactured and sold. The motion to strike was denied and the Lee Company then filed its answer denying the allegations of the complaint and asserting the defense of res judicata. The Commission overruled that defense, apparently upon the theory that the decree in the libel proceeding was not binding upon it; and proceeded, after hearing, to find the representations concerning the capsules to be false and fraudulent and entered a cease and desist order. The Company then appealed to the Court of Appeals for the Eighth Circuit.

---

rights, since claims of res judicata and lack of jurisdiction are always available as defenses.

"In other words, what the Supreme Court intended to do, and what it did in the Myers case and subsequent decisions, was precisely what seems to surprise the appellant; it most assuredly set up a different rule to govern the relationship between courts and administrative agencies from the traditional rule which (subject to the important limitation in Section 265 of the Judicial Code) governs the relationship of courts among themselves."

Title 28, § 2283, U.S.C.A., which became effective September 1, 1948, is as follows:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The Reviser's note on § 2283 is to the effect that the words "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments" were added to restore the basic law as generally understood and interpreted prior to the Toucey decision. So the "important exception" referred to in the foregoing quotation from the appellee's brief no longer exists.

[6] 8 Cir., 1940, 113 F.2d 583.

That court in the course of its opinion remarked, 113 F.2d at 585:

" * * * Although the remedies sought by the government in the two proceedings were different—condemnation in the first, and a cease and desist order in the second, —it is obvious that the alleged falsity of the representations of the petitioner with respect to the therapeutic value and effectiveness of its product constituted the main basis for each of the proceedings; * * *. It is equally obvious that the Commission completely disregarded the effect of the decree entered in the libel case *in conducting its proceedings* and in making its findings of fact, conclusions of law, and order." (Emphasis supplied.)

Toward the close of the opinion the court added, 113 F.2d 586:

" * * * The Commission thus plainly failed to accord to the decree in the libel proceeding the effect to which it was entitled. The Commission redetermined an issue which was already settled by a court of competent jurisdiction and reached a contrary conclusion."

While it is true that the Lee case was an appeal after the Federal Trade Commission had completed its administrative hearing and had entered a final order, it is also true that the Court of Appeals regarded it as obvious that, *in conducting its proceedings* and in making its findings of fact, conclusions of law, and order, the Commission had completely disregarded the effect of the decree in the libel case. That is to say, the court held that the Commission had no right to conduct the proceedings.

The reasoning of the Lee opinion seems to us to be sound, since it is plainly improper for an administrative body to conduct a proceeding for the purpose of relitigating with the same party a question of fact which has already been determined by a court of competent jurisdiction.

The Commission here contends that the District Court had no jurisdiction to entertain the present case and relies principally upon Myers v. Bethlehem Shipbuilding Company, 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, and Oklahoma Press Publishing Company v. Walling, 1946, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, 166 A.L.R. 531.

In the Myers case the National Labor Relations Board initiated a proceeding before itself against the Bethlehem Shipbuilding Company charging it with unfair labor practices in interstate commerce. Notice was given of a hearing in which Bethlehem was required to participate. Before the hearing began, the Bethlehem Shipbuilding Company obtained in a United States district court an injunction forbidding the Board to proceed. The injunction was based on Bethlehem's allegation that it was not engaged in interstate commerce and that therefore the Board was without authority to proceed against it. The Supreme Court held that it was for the Board to decide in the first instance whether Bethlehem was engaged in commerce, that is to say, the determination of that question was a part of the administrative process and therefore the district court had no power to enjoin the hearing. It was held that the administrative process must proceed to a conclusion before any court could intervene and then the remedy lay in the appeal provided by the statute to a circuit court of appeals.

The Oklahoma Press Publishing case is to much the same effect. There the Wage and Hour Administrator, in an investigation under the Fair Labor Standards Act,[7] ordered the Publishing Company to produce certain records. It declined to do so upon the ground that it was not subject to the Act. Thereupon, in a United States district court, the Administrator obtained an order compelling obedience to a subpoena and the action of the district court was affirmed by the circuit court of appeals and by the Supreme Court. The Publishing Company's contention was that the district court should have considered and determined the question whether the company was subject to the Fair Labor Standards Act before compelling obedience to the subpoena. As in the Myers case, the Supreme Court held

---

[7] 29 U.S.C.A. § 201 et seq.

that the coverage of the Act was a question for the Administrator in the first instance, and not for the district court; therefore the question of coverage, being a part of the administrative process, could not be reviewed except as provided by statute when the administrative proceeding had been completed.

The Myers and Oklahoma Press cases are readily distinguishable from the present case. In neither of them was the doctrine of res judicata involved. In neither had there been a previous determination by a court of competent jurisdiction of the issue which the administrative agency was about to consider and decide. Those cases do not support the Commission's contention that an injunction may not be issued in the instant case because it would interrupt the hearing at the threshold, which may not be done under the principle that the administrative process must be completed before recourse can be had to a reviewing court. This is not the threshold of the administrative process, because the evidence has already been heard and the Commission has already announced its conclusion therefrom. The Commission's only possible purpose in desiring to reconsider the record, which has already been construed in one way by the Commission and later in the opposite way by the court, is to reverse the decision of the court.

█ In our opinion, the District Court was fully authorized in this case to enjoin the proceeding proposed by the Commission in order to protect its own jurisdiction and to prevent its previous judgment from being ignored. 28 U.S.C.A. § 1651.

The appellee further argues that the court's finding of a lack of prima facie evidence of fraud does not foreclose a subsequent administrative determination that the same evidence in fact shows fraud. The contention is based on the rule that an administrative finding of fact may not be disturbed upon judicial review if it is supported by substantial evidence; and on the theory that, although the record has been judicially held to lack prima facie evidence of fraud, nevertheless it may contain evidence which is "substantial" and therefore sufficient to insulate the Commission's finding of fraud from a reviewing court's scrutiny. In other words, the appellee asserts that "substantial evidence" under the rule of administrative finality may be less than prima facie evidence; and that the proof already gathered in its public investigation, though judicially branded as not a prima facie showing of fraud, may still be regarded by it as substantial enough to sustain a finding of fraud which may not be reviewed.

█ This is novel doctrine which, in our view, is dangerous in its application and implications. Prima facie evidence is a minimum quantity. It is that which is enough to raise a presumption of fact; or, again, it is that which is sufficient, when unrebutted, to establish the fact.[8] If an administrative finding is immune from

---

[8] Cf. the following statements concerning the nature of substantial evidence:

In National Labor Relations Board v. Columbian Enameling & Stamping Co., 1939, 306 U.S. 292, 299, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660, substantial evidence to support findings by administrative bodies is said to be that which affords " * * * a substantial basis of fact from which the fact in issue can be reasonably inferred. Washington, V. & M. Coach Co. v. National Labor Relations Board, 301 U.S. 142, 57 S.Ct. 648, 81 L.Ed. 965; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; Appalachian Electric Power Co. v. National Labor Relations Board, 4 Cir., 93 F.2d 985, 989; National Labor Relations Board v. Thompson Products, Inc., 6 Cir., 97 F.2d 13; Ballston-Stillwater Knitting Co. v. National Labor Relations Board, 2 Cir., 98 F.2d 758, 764. Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' Consolidated Edison Co. v. National Labor Relations Board, supra, [301 U.S. at page 229, 59 S.Ct. 206, 217, 83 L.Ed. 126] and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. See Baltimore & Ohio R. Co. v.

judicial review when supported only by evidence which is insufficient even to raise a presumption that the fact exists, then the word "substantial" with respect to evidence means much less than we have heretofore supposed. To be substantial enough to support a nonreviewable finding of fact, evidence ought at least be enough to give rise to a presumption that the fact exists. Otherwise unbridled power to make irresponsible and unreviewable findings would be given to administrative agencies—a consummation we are unable to conceive of as a legislative purpose.

Evidence which is too weak, even when unrebutted, to establish the fact in question should never be considered substantial in the sense that an administrative finding based upon it is immune from judicial review. We reject the appellee's theory that the evidence accumulated during its public investigation may be substantial enough to support an unreviewable finding even though it has been judicially held not to amount to prima facie proof. To be substantial, evidence must be strong enough to raise a presumption of fact and must be sufficient, when undenied, to establish the fact. We conclude that "substantial evidence" under the rule of administrative finality does not mean something less than prima facie evidence. If this were not true, a commission such as the appellee could make an unreviewable finding of fact from a record so weak that it would not cause a reasonable mind even to presume the existence of the fact. This shocking proposition is condemned by its mere statement.

We have heretofore noted that the District Court decided, not whether fraud had been perpetrated, but whether the public investigation developed prima facie proof of fraud; and that the new administrative hearing will examine the same issue. But manifestly the trial judge inadvertently failed to notice that, under the pleadings, there would and could be no new evidence in the projected administrative proceeding. This is shown by the following excerpts from his opinion dismissing the complaint:

"The Court considers that its decision in that proceeding [the subpoena enforcement proceeding], unless appealed from and reversed, is binding on the parties thereto. I do not think it can be said that that adjudication undertook to settle what would have been the situation had the record been different from that which the Court considered.

\*      \*      \*      \*      \*      \*

"For me to speculate here on whether or not there is going to be a different record, or whether they are going to depend upon the same kind of evidence that was submitted in the subpoena enforcement proceedings, is perfectly futile."

---

Groeger, 266 U.S. 521, 524, 45 S.Ct. 169, 170, 69 L.Ed. 419; Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720; Appalachian Electric Power Co. v. National Labor Relations Board, supra, 93 F.2d at page 989."

" * * * substantial evidence is evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; and the test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences." Appalachian Electric Power Co. v. National Labor Relations Board, 4 Cir., 1938, 93 F.2d 985, 989.

" 'Substantial evidence' means more than a mere scintilla. It is of substantial and relevant consequence and excludes vague, uncertain, or irrelevant matter. It implies a quality of proof which induces conviction and makes an impression on reason. It means that the one weighing the evidence takes into consideration all the facts presented to him and all reasonable inferences, deductions and conclusions to be drawn therefrom and, considering them in their entirety and relation to each other, arrives at a fixed conviction.

"The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary power. Testimony is the raw material out of which we construct truth and, unless all of it is weighed in its totality, errors will result and great injustices be wrought." National Labor Relations Board v. Thompson Products, Inc., 6 Cir., 1938, 97 F.2d 13, 15.

See also United States v. United States Gypsum Co., D.C.1946, 67 F.Supp. 397, 451, reversed on other grounds.

Of course, the trial court was not called upon to speculate whether there would be a different record, because by its motion to dismiss the appellee admitted that the record would be the same.

The order dismissing the complaint will be set aside and the cause will be remanded. The appellee will then have an opportunity to answer and to deny the allegation that no additional evidence concerning Eaton's collusion will be introduced at its new hearing, and so be relieved of the bar of res judicata. If it does not make such a denial, an injunction will be issued in accordance with the prayer of the complaint, in which event the Commission may nevertheless proceed with the hearing, if it desires, upon the same evidence received in its public investigation, to consider suspending or expelling Otis from the National Association of Securities Dealers, Inc., on a ground other than the alleged instigation of the Masterson suit.

Reversed and remanded.